UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

5-STAR GENERAL STORE aka BENTO LLC,
MARC ALLEN, INC., FAST FORWARD
MEDIA, INC., MEZE LLC, KENNEDY'S IRISH
PUB INC., CARDEN, INC., FRENCH FLORIST,
LLC, LUXE FURNITURE, INC., LUNA'S
HOSPITALITY GROUP, LLC, and THE GENT'S
PLACE MEN'S FINE GROOMING LLC, on
behalf of themselves and others similarly situated,

                        Plaintiffs,

         -against-

AMERICAN EXPRESS COMPANY and
AMERICAN EXPRESS TRAVEL RELATED
SERVICES CO. INC.,

                   Defendants.

Case No. 1:24-cv-00106-MSM-LDA

## DEFENDANTS' MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................**Error! Bookmark not defined.**

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ................................................................................3

    I.     The Plaintiffs Agreed To Arbitrate Their Claims. ....................................3

    II.    Amex Has Been Ready To Arbitrate, but These Plaintiffs Failed To Pay Their Own Filing Fees and Instead Sought To Manipulate Amex's. ...................4

ARGUMENT ...................................................................................................9

    I.     Plaintiffs Have Valid, Enforceable Agreements To Arbitrate. ..............................9

    II.    Plaintiffs' Waiver Argument Itself Must Be Decided by an Arbitrator................10

    III.    Regardless, Plaintiffs Come Nowhere Near the High Bar To Show Amex Abandoned Its Right To Arbitrate. ..........................................12

    IV.    Plaintiffs' Bad Faith Conduct Constitutes Unclean Hands and Precludes Any Assertion of Waiver. ...........................................16

    V.    Amex Could Never Have Waived Its Right To Arbitrate Because the Claims Plaintiffs Plead Here Are Different than Those It Presented in Arbitration..........................................18

    VI.    The Court Should Stay This Action Pending Arbitration....................................20

CONCLUSION..................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air-Con, Inc. v. Daikin Applied Latin Am., LLC,*
  21 F.4th 168 (1st Cir. 2021) ...................................................................................9

*Am. Express Co. v. Italian Colors Rest.,*
  570 U.S. 228 (2013) ............................................................................................1

*Awards.com, LLC v. Kinko's, Inc.,*
  42 A.D.3d 178 (N.Y. App. Div. 2007) ..................................................................13

*Banque Nationale de Paris v. 1567 Broadway Ownership Assocs.,*
  214 A.D.2d 359 (N.Y. App. Div. 1995) ...............................................................16

*Boateng v. Gen. Dynamics Corp.,*
  473 F. Supp. 2d 241 (D. Mass. 2007) ...........................................................10, 11

*Breadeaux's Pisa, LLC v. Beckman Bros. Ltd.,*
  83 F.4th 1113 (8th Cir. 2023) .............................................................................13

*Brown v. Peregrine Enters., Inc.,*
  No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023) ....................................13

*Coger v. Cusumano,*
  191 A.D.2d 493 (N.Y. App. Div. 1993) ...............................................................17

*D'Amico v. Fid. Brokerage Servs. LLC,*
  No. 22-CV-10873-DJC, 2024 WL 710676 (D. Mass. Feb. 21, 2024) .....................4

*Doctor's Assocs., Inc. v. Distajo,*
  107 F.3d 126 (2d Cir. 1997) ...............................................................................19

*Eisemann v. Greene,*
  204 F.3d 393 (2d Cir. 2000) ...............................................................................18

*FPE Found. v. Cohen,*
  801 F.3d 25 (1st Cir. 2015) .................................................................................18

*Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.,*
  850 N.E.2d 653 (N.Y. 2006) ...............................................................................12

*Great Northern Assocs., Inc. v. Continental Cas. Co.,*
  192 A.D.2d 976 (N.Y. App. Div. 1993) ...............................................................12

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ................................................................................10, 11

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   433 F. Supp. 3d 395 (E.D.N.Y. 2020), *aff'd*, 19 F.4th 127 (2d Cir. 2021) .........................1, 10

*In re Tyco Int'l Ltd. Sec. Litig.*,
   422 F.3d 41 (1st Cir. 2005) ................................................................................12, 15

*Jefpaul Garage Corp. v. Presbyterian Hosp. in City of New York*,
   462 N.E.2d 1176 (N.Y. 1984) ................................................................................13

*Jubilant Generics Ltd. v. Dechra Veterinary Prod.*,
   LLC, No. 2:23-CV-00237-JDL, 2024 WL 1329714 (D. Me. Mar. 28, 2024) .........................18

*Keystone Driller Co. v. General Excavator Co.*,
   290 U.S. 240 (1933) ................................................................................16

*Laugh Factory Inc. v. Basciano*,
   608 F. Supp. 2d 549 (S.D.N.Y. 2009) ................................................................................17

*Maloney v. Nw. Masonic Aid Ass'n*,
   8 A.D. 575 (N.Y. App. Div. 1896) ................................................................................16

*Marie v. Allied Home Mortg. Corp.*,
   402 F.3d 1 (1st Cir. 2005) ................................................................................11, 13

*Menorah Ins. Co. v. INX Reins. Corp.*,
   72 F.3d 218 (1st Cir. 1995) ................................................................................15

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022) ................................................................................18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................11

*Musharbash v. JPMorgan Chase Bank*,
   No. 2:22-CV-02320-DAD-KJN, 2024 WL 919186 (E.D. Cal. Mar. 1, 2024) .........................18

*Oliveira v. New Prime, Inc.*,
   857 F.3d 7 (1st Cir. 2017) ................................................................................20

*Optima Media Grp. Ltd. v. Bloomberg L.P.*,
   383 F. Supp. 3d 135 (S.D.N.Y. 2019) ................................................................................13

*Pre-Paid Legal Servs., Inc. v. Cahill*,
   786 F.3d 1287 (10th Cir. 2015) ................................................................................14

*Precision Instrument Mfg. Co v. Auto. Maint. Mach. Co.*,
    324 U.S. 806 (1945).................................................................................16

*Ribadeneira v. New Balance Athletics, Inc.*,
    65 F.4th 1 (1st Cir. 2023)........................................................................9

*Rivera-Colón v. AT&T Mobility Puerto Rico, Inc.*,
    913 F.3d 200 (1st Cir. 2019)....................................................................9

*Sink v. Aden Enters., Inc.*,
    352 F.3d 1197 (9th Cir. 2003) ...............................................................14

*Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*,
    640 F.3d 471 (1st Cir. 2011)....................................................................9

*Stamford Comput. Grp. v. Metro. Opera Ass'n*,
    No. 01-Civ-2148 (SAS) (S.D.N.Y. Aug. 12, 2002)..................................18

*State St. Glob. Advisors Tr. Co. v. Visbal*,
    677 F. Supp. 3d 209 (S.D.N.Y. 2023).....................................................17

*Stanley v. A Better Way Whole Autos, Inc.*,
    No. 3:17-CV-0215-MPS, 2018 WL 3872156 (D. Conn. Aug. 15, 2018)...............14

*Structured Cap. Sols., LLC v. Commerzbank AG*,
    177 F. Supp. 3d 816 (S.D.N.Y. 2016)....................................................13

*Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*,
    8 F.4th 56 (1st Cir. 2021)......................................................................12

*United States v. Nat'l Treasury Emps. Union*,
    513 U.S. 454 (1995)...............................................................................19

*United States v. Olano*,
    507 U.S. 725 (1993)...............................................................................12

*Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*,
    683 F.3d 577 (4th Cir. 2012) ................................................................14

**Statutes & Rules**

Federal Arbitration Act, 9 U.S.C. §§ 1-4 ..................................................1, 9, 10, 20

Fed R. Civ. P. 12(f)..................................................................................................1

Fed R. Civ. P. 23(d)(1)(D).......................................................................................1

**Other Authorities**

*Mass Arbitration Shakedown: Coercing Unjustified Settlements*,
    U.S. Chamber of Com., Inst. for Legal Reform (Feb. 28, 2023),
    https://instituteforlegalreform.com/research/mass-arbitration-shakedown-coercing-
    unjustified-settlements/ ........................................................................................................17

Defendants American Express Company and American Express Travel Related Services Company, Inc. (together, "Amex") respectfully move this Court for an order compelling arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and staying this proceeding pending arbitration, 9 U.S.C. § 3.[1]

## PRELIMINARY STATEMENT

Merchants that accept American Express cards agree to arbitrate disputes with Amex. The 10 named plaintiffs here ("Plaintiffs") are small merchants who have done precisely that. Plaintiffs acknowledge there are valid, binding arbitration provisions in the contracts that govern their acceptance of American Express cards. And for over a decade, courts across this country—all the way to the U.S. Supreme Court—have held that Amex's arbitration provisions with merchants are valid and must be enforced. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013); *see also In re Am. Express Anti-Steering Rules Antitrust Litig.*, 433 F. Supp. 3d 395 (E.D.N.Y. 2020), *aff'd*, 19 F.4th 127 (2d Cir. 2021) (compelling arbitration of similar merchant claims against Amex). Amex has these arbitration agreements for good reason: because they promote the "informal" and "speedy resolution" of disputes. *Italian Colors*, 570 U.S. at 239.

This lawsuit is a cynical attempt by Plaintiffs' counsel to avoid arbitration by manufacturing a supposed "waiver" of contractual arbitration provisions. That maneuver fails because Amex has been, and continues to be, committed to arbitrating these claims with Plaintiffs. Plaintiffs' argument depends on confusion about filing fees created by their own counsel. Amex repeatedly agreed to pay filing fees in the arbitrations at issue here. And Amex

---

[1] Amex is concurrently filing a Motion to Strike these claims pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D) based on certain basic legal errors in Plaintiffs' allegations. If the Court grants this Motion to Compel Arbitration, it need not resolve the Motion to Strike.

actually has paid filing fees (and more) in other identical arbitrations that are now proceeding. Because Amex remains ready to arbitrate, Plaintiffs cannot meet their heavy burden of showing that Amex knowingly, voluntarily, intentionally and unequivocally abandoned its right to arbitration.

This Court need not wade into any of the facts here, because whether anything Amex did in the course of trying to initiate arbitrations with these Plaintiffs could amount to waiver is a question of arbitrability that itself must be decided by an arbitrator. The proceedings before the American Arbitration Association ("AAA") that Plaintiffs seek to put at issue here were lengthy, detailed and tied up in the intricacies of AAA rules and actions by the AAA; determining the consequences of the parties' conduct in months-long strings of emails to and from AAA is an issue best left to an arbitrator. Thus, all of Plaintiffs' arguments that attempt to avoid arbitration are directed at the wrong audience.

But if the Court were to consider the facts, what **_Plaintiffs' counsel_** did here in front of AAA was nothing more than a ploy for a quick settlement. In August 2023, without paying a cent in filing fees, Plaintiffs' counsel emailed a list of 5,155 claimants to AAA. AAA repeatedly confirmed that the per case filing fee for all cases where Amex disputed claimants' request for injunctive relief—which includes Plaintiffs' cases—would be $925 per case, with Claimant's contribution capped at $350. Still, over a four-month period, Plaintiffs and others represented by the same counsel refused to pay their share of that fee. Instead, Plaintiffs' counsel repeatedly urged AAA to **_increase_** the filing fee to $3,500 per case, even though such an increase was not necessary in order for the arbitrations to proceed and would have no financial impact on Claimants: Amex would bear that entire increase. Ultimately, in January, AAA purported to abandon its prior promises concerning filing fees and stated that the filing fee should be $3,500

per case—a difference to be borne by Amex alone.  Then, based on the fiction that Amex had refused to pay filing fees, AAA "administratively closed" the 5,155 cases.  At any point up until then, Plaintiffs could have paid their share of the filing fees and proceeded with their claims, but simply chose not to do so.  Against this backdrop, any suggestion that Amex has waived or abandoned its commitment to arbitrate Plaintiffs' claims is frivolous.  Amex repeatedly *agreed* to pay its share of the filing fees in AAA.  And Amex has paid filing fees in and is actively arbitrating 773 cookie-cutter claims brought by the same counsel, by the same types of merchants in JAMS arbitrations, and is arbitrating another 486 claims before AAA.

Plaintiffs' waiver argument fails for another reason, too:  waiver is an equitable doctrine and cannot be raised by parties with unclean hands.  Here, Plaintiffs have unclean hands because they urged AAA to increase the filing fee for an improper, bad faith purpose—and thereby *created* the very problem they now seek to exploit.  These 10 Plaintiffs should be compelled to arbitrate their claims, just like Plaintiffs' counsel's other clients.

## STATEMENT OF FACTS

### I.  The Plaintiffs Agreed To Arbitrate Their Claims.

Plaintiffs allege that they accept American Express-branded credit cards through "third-party processors".  (Barbur Decl. Ex. 4, Arb. Demands ¶¶ 1, 24.)  They allege they are bound by the arbitration agreement in the American Express Merchant Operating Guide (the "MOG"), which is supposed to be incorporated by reference into each contract between a third-party processor and the merchant accepting American Express cards through that third party.  (*Id.* ¶¶ 1-3.)  The MOG includes a dispute resolution section entitled "Arbitration Agreement (as to Claims involving American Express)".  (Barbur Decl. Ex. 5, Amex MOG § 13.1.)  This arbitration agreement requires either party "to resolve any Claim" against the other "by

individual, binding arbitration". (*Id.* § 13.1(c).) "If arbitration is chosen by either party, neither you nor we have the right to litigate that Claim in court." (*Id.*)

## II.    Amex Has Been Ready To Arbitrate, but These Plaintiffs Failed To Pay Their Own Filing Fees and Instead Sought To Manipulate Amex's.

Plaintiffs' Complaint includes a discussion of the relevant procedural history that is inaccurate and misleading. (*See* Compl. ¶¶ 8-14.) Upon a motion to compel arbitration, the Court need not take Plaintiffs' account on its face, and instead should "exercise[] its wide discretion to look beyond the complaint at pleadings and documents submitted by either party". *D'Amico v. Fid. Brokerage Servs. LLC*, No. 22-CV-10873-DJC, 2024 WL 710676, at *1 (D. Mass. Feb. 21, 2024) (internal quotations omitted).

Counsel for these Plaintiffs first contacted counsel for Amex on August 14, 2023, purporting to have "filed 10,517 individual demands for arbitration with AAA . . . regarding American Express' anti-steering rules".[2] (Barbur Decl. Ex. 1, Aug. 14, 2023 Email from S. Harris to P. Barbur.) Plaintiffs' counsel provided only a single "exemplar" demand the following day, not a demand for any of these Plaintiffs. (Barbur Decl. Ex. 2, Aug. 15, 2023 Email from S. Harris to P. Barbur.) On August 22, 2023, Plaintiffs' counsel emailed Amex's counsel with links containing the 10,517 nearly identical Demands. (Barbur Decl. Ex. 3, Aug. 22, 2023 Email from A. Camp to P. Barbur.) But Plaintiffs paid no filing fees to AAA, even though AAA's rules are clear that filing fees must be paid to initiate an arbitration. (Barbur Decl. Ex. 9, AAA Com. Arb. R. & Mediation Procs. R-4(a)(i).) Thus, on September 20, 2023,

---

[2] Amex's "anti-steering rules", commonly known as non-discrimination provisions or "NDPs", prohibit merchants from directing consumers away from using American Express, including by requiring consumers to pay a surcharge if they use their American Express card.

4

AAA determined that Plaintiffs "ha[d] not yet satisfied the AAA's filing requirements". (Barbur Decl. Ex. 8, Sept. 20, 2023 Letter from E. Corsetti to S. Harris.)

Under AAA rules, filing fees can be higher if the claimant seeks injunctive relief but, as AAA repeatedly recognized, Amex vigorously contested that Plaintiffs have standing to seek the injunctive relief they sought in their Demands, which covered merchants beyond each Plaintiff itself.[3] Amex even stipulated that it would agree to injunctive relief covering the individual Plaintiff if liability was established—although some Claimants (members of the putative class here) could not even pursue that relief, as they never had processed any transactions on American Express cards. (Barbur Decl. Ex. 7, Sept. 13, 2023 Letter from P. Barbur to H. Santo.) Plaintiffs' counsel even told AAA that with respect to such Claimants—"any merchant that does not currently accept Amex cards" and "ha[s] not billed any Amex transaction volume in the one-year period before filing . . . lacks standing to seek injunctive relief". (Barbur Decl. Ex. 14, Dec. 1, 2023 Email from S. Harris to E. Corsetti.)

In protracted correspondence with the Parties about filing fees between September and December of 2023, AAA repeatedly acknowledged that Amex contested Plaintiffs' claims for injunctive relief. (Barbur Decl. ¶¶ 6, 8.) Thus, AAA confirmed on four separate occasions that the filing fees for cases where Amex disputed that Plaintiffs are entitled to injunctive relief (all 5,155 cases) would be $925 per case and could proceed on that basis.[4] These determinations

---

[3] *E.g.*, Barbur Decl. Ex. 7, Sept. 13, 2023 Letter from P. Barbur to H. Santo (stating that "a merchant claimant can only pursue claims on an individual basis" and not "on behalf of other merchants"); Barbur Decl. Ex. 10, Dec. 6, 2023 Letter from P. Barbur to E. Corsetti (explaining that a merchant is only "entitled [to] an injunction running to that merchant alone (*i.e.*, what Amex has agreed to stipulate to)").

[4] Barbur Decl. Ex. 8, Sept. 20, 2023 Letter from E. Corsetti to S. Harris ("The initial filing fees, under the AAA's Commercial Arbitration Rules Administrative Fee Schedule, will be as follows . . . Damages Claims under $75,000 with Injunctive Relief claims that are contested by

were final and unequivocal.  Indeed, in the face of a barrage of correspondence from Plaintiffs, AAA said that "AAA is not welcoming further comments on this issue" and claims should "proceed to arbitration" before any further discussion of fees would be warranted.[5]  (Barbur Decl. Ex. 11, Sept. 22, 2023 Email from E. Corsetti to D. Bryson.)  AAA explained that it made its fee determination not just because Amex challenged Plaintiffs' claims for injunctive relief (which Amex did), but also because of "the large volume of cases" brought by Claimants' counsel.  (*Id.*)

Throughout the trail of correspondence, Amex made clear that it was willing to pay its share of the $925 per case filing fee set by AAA, for example, saying on December 12, 2023: "Amex stands ready at this time to pay its share of the filing fees you have previously described."  (Barbur Decl. Ex. 16, Dec. 12, 2023 Letter from P. Barbur to E. Corsetti; *see also* Barbur Decl. Ex. 19, Jan. 22, 2024 Letter from P. Barbur to E. Corsetti (Amex "is willing to pay

---

Respondents: $925 per case."); Barbur Decl. Ex. 11, Sept. 22, 2023 Email from E. Corsetti to D. Bryson ("AAA made the administrative determination that we will charge $925 as an initial filing fee covering the damages claims and defer the balance of $2,575 pending an arbitrator's threshold determination that some or all of the contested cases may proceed with injunctive relief claims."); Barbur Decl. Ex. 12, Nov. 16, 2023 Email from E. Corsetti to S. Harris ("Absent party agreement, we will proceed with initiating the merits arbitrations. The initial filing fees will be assessed as previously confirmed in our letter of September 22, 2023 . . . . $925 initial filing fee – for cases with *contested injunctive relief claims*."); Barbur Decl. Ex. 13, Dec. 13, 2023 Email from E. Corsetti to S. Harris ("[W]e will proceed to the initiation of the merits arbitrations once the filing requirements have been met. This requires payment of the initial filing fees, which will be assessed as previously confirmed . . . . $925 initial filing fee – for cases with *contested claims for injunctive relief* pending an arbitrator's threshold determination that some or all of the contested claims for injunctive relief may proceed – if a claim for injunctive relief is allowed to proceed, the balance of the $2,575 initial filing fee will be due.").

[5] AAA also made clear that an arbitrator would have the ultimate say in whether additional filing fees should be paid (Barbur Decl. Ex. 11, Sept. 22, 2023 Email from E. Corsetti to D. Bryson), and Amex agreed that whether claims for injunctive relief can proceed—and by extension the filing fees question—should be determined by a merits arbitrator (Barbur Decl. Ex. 17, Dec. 1, 2023 Letter from P. Barbur to E. Corsetti).

its share of $925 for each claim"); Barbur Decl. Ex. 20, Feb. 5, 2024 Letter from P. Barbur to E. Corsetti ("Amex will also pay its share of the $925 for the other 5,125 cases.").)

But for over four months (September through December of 2023), Plaintiffs refused to pay their share of the $925 filing fee set by AAA and move forward on their claims. Instead, they engaged in a protracted letter-writing campaign with AAA in which they urged AAA to increase the per case filing fee from $925 to $3,500, knowing full well that proceeding under the lower filing fee would have no impact on their ability to arbitrate their claims, and that Amex would bear the entire increase alone. (Barbur Decl. ¶¶ 4, 7, 9-10.) Plaintiffs continued to send these letters even after AAA specifically said it was not "welcoming further comment".[6]

On January 18, 2024, out of the blue, AAA sent the parties a letter announcing that it was reversing its position and now sought payment of $3,500 in filing fees for all cases. (Barbur Decl. Ex. 18, Jan. 18, 2024 Email from E. Corsetti to P. Barbur.) Counsel for Amex pushed back, citing the prior correspondence and reiterating that it stood ready to pay its share of the $925 filing fee. (Barbur Decl. Ex. 19, Jan. 22, 2024 Letter from P. Barbur to E. Corsetti; Barbur Decl. Ex. 20, Feb. 5, 2024 Letter from P. Barbur to E. Corsetti.) AAA did not respond, and at no point did it acknowledge that Plaintiffs had repeatedly refused to pay their share of the $925 filing fee. Instead, AAA listed the status of 5,155 claims, including these Plaintiffs', as "administratively closed for non-payment". (Barbur Decl. Ex. 21, Feb. 29, 2024 Email from

---

[6] For example, when in November of 2023 AAA asked the parties to address the possible use of a "process arbitrator", Plaintiffs responded on December 1, and again on December 7, by ignoring that issue and instead arguing that "the AAA filing fee schedule [] demands application of the $3,500 filing fee." (Barbur Decl. Ex. 14, Dec. 1, 2023 Email from S. Harris to E. Corsetti; Barbur Decl. Ex. 15, Dec. 7, 2023 Email from S. Harris to E. Corsetti.) In light of AAA's admonition against further comments, Amex did not respond to the substance of that letter and instead reconfirmed that it was ready to pay its share of the $925 filing fee. AAA then confirmed again that the filing fee would be $925. (Barbur Decl. Ex. 13, Dec. 13, 2023 Email from E. Corsetti to S. Harris.)

E. Corsetti to S. Harris.) The basis, merits and consequences of AAA's decision in January are best left to an arbitrator to decipher.

Shortly thereafter, Plaintiffs—represented by the same counsel—filed the instant action. Although Plaintiffs purport to be vindicating the rights of merchants who initially sought to arbitrate their claims, their Complaint is by no means a restatement of Plaintiffs' arbitral Demands. Instead, Plaintiffs request significantly broader injunctive relief than they had sought in arbitration. Furthermore, the Complaint asserts a claim to a declaratory judgment that appears nowhere in the arbitral Demands. (Compl. ¶ 61.) In addition, the Complaint alleges that Amex has market power, whereas the Demands alleged that market power is irrelevant. (*Compare* Compl. ¶ 44 ("[P]laintiffs will show that Amex has market power in the relevant market."), *with* Barbur Decl. Ex. 4, Arb. Demands ¶ 51 ("[M]arket power concepts have no relevance to this case.").) Plaintiffs wholly fail to explain how Amex could have, through prior conduct, supposedly waived its right to require arbitration of claims that are asserted for the first time in this lawsuit.

To this day, Amex remains willing to arbitrate all 5,155 claims at issue here, and to pay the filing fees necessary to do so. Indeed, 486 other arbitrations brought by Plaintiffs' counsel asserting substantially the same theories are already proceeding in AAA; Amex has paid its share of filing fees and arbitration fees. (Barbur Decl. Ex. 22, Mar. 5, 2024 Email from T. Zysk to S. Harris.) In addition, 773 other identical claims are proceeding through the JAMS arbitral organization. (Barbur Decl. Ex. 23, Jan. 10, 2024 Email from S. Nevins to P. Barbur; Barbur Decl. Ex. 24, Jan 31, 2024 Email from S. Nevins to S. Harris.) In those cases, Amex not only paid its share of filing fees but agreed to advance filing fees actually owed by Claimants so that the arbitrations could proceed. (*Id.*)

**ARGUMENT**

Plaintiffs have conceded that they are subject to a binding arbitration agreement with Amex. Their arbitral Demands with AAA specifically allege that. The only question, as Plaintiffs assert in their Complaint, is whether Amex waived its right to require arbitration of Plaintiffs' claims. Amex has not.

**I.      Plaintiffs Have Valid, Enforceable Agreements To Arbitrate.**

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, requires that district courts, upon the production of a valid arbitration agreement, "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement", *id.* § 4; *see also Ribadeneira v. New Balance Athletics, Inc.*, 65 F.4th 1, 15 n.8 (1st Cir. 2023). "The party seeking to compel arbitration bears the burden of demonstrating 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 174 (1st Cir. 2021) (quoting *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011)). The parties' arbitration agreement states that the FAA governs, as the parties' agreement and transactions are part of interstate commerce. (Barbur Decl., Ex. 5, Amex MOG § 13.1(c)(vii)); 9 U.S.C. § 2.

"Because arbitration is a creature of contract, 'principles of state contract law control the determination of whether a valid agreement to arbitrate exists.'" *Rivera-Colón v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 207 (1st Cir. 2019) (quoting *Soto-Fonalledas*, 640 F.3d at 475). The parties' arbitration agreement establishes that New York law applies. (Barbur Decl. Ex. 5, Amex MOG § 13.1(c)(vii).)

Plaintiffs agree that there are valid arbitration agreements between themselves and Amex. The Complaint describes 5,155 merchant claimants (10 of which are named Plaintiffs in this

action) who submitted arbitration Demands against Amex, which is itself an admission that an arbitration agreement exists between the parties.  (Compl. ¶ 9.)  Moreover, each of the Plaintiffs' arbitration Demands specifically alleges that "Claimant is bound by the arbitration provisions set forth in the American Express Merchant Operating Guide".[7]  (Barbur Decl. Ex. 4, Arb. Demands ¶¶ 1, 4.)  Nor is there any question that the claims at issue are claims that must be arbitrated.  Indeed, the Demands say that Claimants are seeking damages and injunctive relief "[p]ursuant to the Arbitration Provision".  (*Id.* ¶ 4.)

Amex has thus satisfied its initial burden to establish the existence, applicability and scope of the parties' arbitration agreements.  That is all that is required to be entitled to an order compelling arbitration under the FAA.  9 U.S.C. § 4.  Indeed, it is notable that another purported merchant class action asserting similar claims was filed in federal court in New York.  The court there granted Amex's motion to compel arbitration and ordered that case stayed pending arbitration, the same relief Amex seeks here.  *In re Am. Express*, 433 F. Supp. 3d at 401.  This Court should do the same.

## II.     Plaintiffs' Waiver Argument Itself Must Be Decided by an Arbitrator.

As an initial matter, Plaintiffs' argument that Amex supposedly waived its right to arbitrate must be brought in arbitration, not this Court.  The Supreme Court has made clear that "'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide".  *Boateng v. Gen. Dynamics Corp.*, 473 F. Supp. 2d 241, 250 (D. Mass. 2007) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  "Illustrating the types of issues that might qualify as 'procedural,'

---

[7] Copies of the arbitration Demands submitted to AAA by the 10 named Plaintiffs are attached to the Declaration of Peter T. Barbur being filed herewith.

the [Supreme] Court in *Howsam* expressly stated that 'the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability.'" *Id.* (quoting *Howsam*, 537 U.S. at 84).

It makes sense that "allegations of waiver" must be arbitrated. *Id.* A waiver argument, like the one made by Plaintiffs here, "involves questions of fact . . . and contract interpretation", and "[a]rbitrators are well-suited to answer such questions". *Id.* An exception exists if the alleged waiver resulted from conduct in the same litigation before the same judge, because in that case, "the district court has power to control the course of proceedings before it". *Id.* (quoting *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 13 (1st Cir. 2005)). But if the conduct that supposedly gave rise to a waiver happened outside the present litigation—as is the case here—the question of waiver must be arbitrated. It is particularly appropriate that an arbitrator resolve the waiver argument here because it turns on months of correspondence with AAA and interpretation of AAA's rules. Drawing from Supreme Court precedent, "allowing the arbitrator to decide the waiver issue . . . is in line with the liberal federal policy in favor of arbitration, and the general rule that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Thus, in this case, the Court need not and should not take up Plaintiffs' arguments about supposed waiver occurring outside of these proceedings. Plaintiffs' "asserted defenses to arbitrability, including the defense of non-litigation-related waiver, should be decided by the arbitrator." *Id.*

### III.    Regardless, Plaintiffs Come Nowhere Near the High Bar To Show Amex Abandoned Its Right To Arbitrate.

Even if the question were before this Court, Plaintiffs have no basis to argue waiver. Plaintiffs' only argument in support of pursuing these claims in court rather than through arbitration is that Amex supposedly refused to pay arbitral fees, which Plaintiffs characterize as a waiver under common law and as a "default" under § 3 of the FAA.  (Compl. ¶ 15.)  That is wrong as a matter of law and as a matter of undisputed fact.

Waiver is an "intentional relinquishment or abandonment of a known right".  *United States v. Olano*, 507 U.S. 725, 733 (1993).  Under New York law—which is the substantive law that governs Plaintiffs' claims as per the arbitration provision—waiver requires "knowingly, voluntarily and intentionally abandon[ing]" one's contractual rights.  *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 850 N.E.2d 653, 658 (N.Y. 2006).  Arguments about waiver are even more suspect in the context of agreements to arbitrate.  "[A]s federal policy strongly favors arbitration of disputes, a waiver is not to be lightly inferred, and thus reasonable doubts as to whether a party has waived the right to arbitrate should be resolved in favor of arbitration."  *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 44 (1st Cir. 2005) (citation omitted).  Plaintiffs, as the ones invoking waiver, bear the burden of proving it.  *Cf. Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*, 8 F.4th 56, 64 (1st Cir. 2021)*.*  Thus, for Plaintiffs to meet their burden of demonstrating waiver, they must show that Amex's conduct "reflects a positive and unequivocal election to ignore his or her arbitration rights".  *Great Northern Assocs., Inc. v. Continental Cas. Co.*, 192 A.D.2d 976, 978-79 (N.Y. App. Div. 1993).  They cannot do that.

Further, the parties' arbitration agreement contains a "no waiver" clause as to both sides' arbitral rights that forecloses any suggestion of waiver here.  The fact that the parties agreed that

either one could "choose . . . to not exercise rights under the arbitration provision . . . without waiving the right to exercise or enforce those rights on any other occasion" leaves no doubt that Amex in no way intentionally relinquished its right to arbitrate Plaintiffs' claims.[8] *See Optima Media Grp. Ltd. v. Bloomberg L.P.*, 383 F. Supp. 3d 135, 151 (S.D.N.Y. 2019) (citing *Jefpaul Garage Corp. v. Presbyterian Hosp. in City of New York*, 462 N.E.2d 1176, 1178 (N.Y. 1984) ("[T]he New York Court of Appeals has [] indicated that such a [no waiver] clause may preclude inferring waiver as a matter of law.")).  Moreover, the no waiver clause agreed to by the parties plainly demonstrates a broad agreement to arbitrate claims *even after* they have been filed and litigated in court,[9] further evincing the parties' clear agreement to resolve disputes such as this one in arbitration rather than in court.

The standard for finding default under § 3 of the FAA is essentially the same as waiver: it requires conduct that is inconsistent with an intent to arbitrate.  Indeed, courts treat the concepts of default and waiver as interchangeable.  *See, e.g., Marie*, 402 F.3d at 12-13; *Breadeaux's Pisa, LLC v. Beckman Bros. Ltd.*, 83 F.4th 1113, 1117 (8th Cir. 2023) ("When addressing whether the applicant defaulted, we determine whether the applicant waived its contractual right to arbitrate."); *Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL

---

[8] The no-waiver clause provides:  "Either [party] may choose to delay enforcing or to not exercise rights under this arbitration provision, including the right to elect to arbitrate a Claim, without waiving the right to exercise or enforce those rights on any other occasion."  (Barbur Decl. Ex. 5, Amex MOG § 13.1(c)(iii).)  "No-waiver clauses are enforceable under New York law", *Structured Cap. Sols., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 825 (S.D.N.Y. 2016), and "are uniformly enforced", *Awards.com, LLC v. Kinko's, Inc.*, 42 A.D.3d 178, 188 (N.Y. App. Div. 2007).

[9] Barbur Decl. Ex. 5, Amex MOG § 13.1(c)(iii) ("You or we may elect to arbitrate any Claim, including one that concerns or relates to transactions involving a Merchant Services Provider, that has been filed in court at any time before the earlier of the presentation of evidence at trial has begun and final judgment being entered on the Claim.")

8800728, at *3 (2d Cir. Dec. 20, 2023) ("We have equated a waiver of the right to arbitrate with a default in proceeding with such arbitration under section 3 of the FAA." (internal quotations omitted)).  Like the burden to show waiver, the burden to show default is "heavy", and lies with the party opposing arbitration.  *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 586 (4th Cir. 2012).

Here, as discussed above, Plaintiffs' assertion that Amex waived its right to arbitrate and is in default because Amex refused to pay filing fees for 5,155 AAA claims is simply false and does not establish waiver or default.  Amex repeatedly said that it was willing to pay its share of filing fees in the amount that AAA had said—four times, unequivocally—were all that was required for these cases to proceed in arbitration.  It was Plaintiffs who refused to pay their share of such filing fees when they submitted their claims and for the nearly five months during which AAA stated that the matters could proceed with a $925 per case fee.  Even when AAA inexplicably reversed course and purported to impose higher fees—a position that Amex properly rejected—Amex continued to reiterate that it was willing to pay its share of the amount ($925) that AAA had repeatedly said was all that was required in order for these cases to proceed.

Cases in which courts have found that a party waived its right to arbitrate by refusing to pay arbitral fees are distinguishable and show why this case comes nowhere close.[10]  For example, in *Stanley v. A Better Way Whole Autos, Inc.*, the party seeking to compel arbitration was found to have waived for nonpayment of fees because they only offered to pay *after* AAA

---

[10] *See Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) (finding default for failure to pay fees because the party did not engage with arbitrators to modify the payment schedule to allow the arbitration to continue); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003) (finding default for failure to pay fees after the parties agreed on the timing of and responsibility for payment of arbitration costs).

administratively closed the cases.  No. 3:17-CV-01215-MPS, 2018 WL 3872156, at *6

(D. Conn. Aug. 15, 2018).  Prior to closure, the movant did not respond *at all* to AAA or

opposing counsel's letters or demand, and thus did not offer to pay anything at all to initiate

arbitration.  Here, Amex engaged with AAA and opposing counsel regularly and—unlike

Claimants—offered to proceed to arbitration on the basis of the originally established $925 per

claim fee.  Plaintiffs had an easy path to proceed with Amex paying its share of the filing fee and

Plaintiffs paying their share of $350, which they contended would apply no matter what Amex

paid.  (Barbur Decl. Ex. 6, Sept. 6, 2023 Letter from S. Harris to E. Corsetti.)  Similarly, in *In re*

*Tyco*, the party that waived arbitration had sent a letter to their counterparty stating not only that

it would not pay filing fees, but that they did "not consent to the AAA's administration . . . and

[did] not agree to participate in the arbitration" at all.  422 F.3d at 44.  Here, in contrast, Amex

has resolutely accepted AAA's jurisdiction, as evidenced by its willingness to proceed upon the

$925 per claim fee basis and its active support and participation in nearly 1,200 identical

arbitrations.  The *In re Tyco* court was particularly concerned with the party's "deliberate

gamesmanship", which "directly conflicts with the oft-cited principle that arbitration is 'not

meant to be another weapon in the arsenal for imposing delay and costs in the dispute resolution

process'".  *Id.* at 47 (quoting *Menorah Ins. Co. v. INX Reins. Corp.*, 72 F.3d 218, 222 (1st Cir.

1995)).  Yet it is Plaintiffs, whose refusal to arbitrate for $925 per claim and insistence on

imposing higher fees solely on Amex, who impermissibly imposed delay and costs.

Those cases also turned on the fact that the non-paying party had acted inconsistently

with the right to arbitrate.  Here, in addition to having repeatedly offered to pay arbitral fees,

Amex is currently arbitrating—and has paid arbitral fees in—nearly 500 identical claims brought

by the same counsel in AAA and also nearly 800 additional claims in JAMS.  (*See supra* p. 3.)

There are simply no cases in which a court found waiver or default based on facts remotely similar to those here.

There should also be no concern that compelling arbitration here would deprive Plaintiffs of a forum to resolve their disputes. Nothing in an order compelling arbitration would limit Plaintiffs' ability to re-file their claims with AAA or JAMS. As noted, other identical cases brought by the same counsel against Amex are already proceeding in both AAA and JAMS. With respect to paying filing fees if Plaintiffs choose to re-file in AAA, Plaintiffs can agree to proceed on the basis of the originally determined $925 per claim filing fee, or advance the additional portion of a $3,500 per claim filing that fee that *they* insist applies, both viable courses that Plaintiffs have refused to invoke. (*See* Barbur Decl. Ex. 9, AAA Com. Arb. R. & Mediation Procs. R-57.) If they are correct in their views about who is responsible for paying what, Plaintiffs can ultimately recoup their advancement of fees through applications to individual arbitrators.

## IV.   Plaintiffs' Bad Faith Conduct Constitutes Unclean Hands and Precludes Any Assertion of Waiver.

Waiver is an equitable doctrine. *See Maloney v. Nw. Masonic Aid Ass'n*, 8 A.D. 575, 580 (N.Y. App. Div. 1896); *Banque Nationale de Paris v. 1567 Broadway Ownership Assocs.*, 214 A.D.2d 359, 361 (N.Y. App. Div. 1995). Moreover, it is well settled that any party "who comes in to [a court of] equity must come with clean hands". *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 241 (1933); *see also Precision Instrument Mfg. Co v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 825 (1945) ("Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim."). Under New York Law, to establish unclean hands, "a defendant must provide evidence to support an argument that the plaintiff has engaged in 'inequitable

conduct or bad faith where the misconduct has a material relation to the equitable relief that plaintiff seeks'". *State St. Glob. Advisors Tr. Co. v. Visbal*, 677 F. Supp. 3d 209, 278 (S.D.N.Y. 2023) (quoting *Laugh Factory Inc. v. Basciano*, 608 F. Supp. 2d 549, 560 (S.D.N.Y. 2009)). There is no question that the unclean hands doctrine applies to assertions of waiver. *Coger v. Cusumano*, 191 A.D.2d 493, 495 (N.Y. App. Div. 1993) ("[T]he [party invoking waiver's] unclean hands prevent him from invoking any equitable defense such as those which he has alleged." (internal quotations omitted)).

Here, Plaintiffs' bad faith conduct is obvious. Although AAA repeatedly said that these cases could proceed in arbitration if filing fees of $925 per case were paid, Plaintiffs refused to proceed on that basis and instead insisted that higher filing fees should be required. That request to increase fees had no possible proper purpose and was thus necessarily made in bad faith. If Plaintiffs' goal was simply to proceed with their claims in arbitration, no increase in filing fees was required. Moreover, because AAA had determined that Plaintiffs' obligation to pay filing fees was capped at $350 per case, Plaintiffs knew that Amex would be required to pay the balance of any increase—which would amount to millions of dollars. Plaintiffs' request for an increase in filing fees was thus necessarily made for the sole purpose of trying to pressure Amex to settle based on the threat of paying exorbitant filing fees (and not for any proper reason having to do with the merits of the underlying claims). Plaintiffs have put forth no colorable argument to the contrary.

Commentators, including the U.S. Chamber of Commerce, have noted the risk that "mass arbitrations" such as this will be used only to try to extort settlements based on the threat of defendants having to pay millions of dollars in filing fees. Andrew J. Pincus et al., *Mass Arbitration Shakedown: Coercing Unjustified Settlements*, U.S. Chamber of Com., Inst. for

Legal Reform (Feb. 28, 2023), https://instituteforlegalreform.com/research/mass-arbitration-shakedown-coercing-unjustified-settlements/.  But this case is unique in that Plaintiffs continued their shakedown scheme even *after* Amex *agreed* to pay the arbitral fees set by AAA—insisting that Amex be required to pay even more.  That can only have been done to harass and extort Amex.  Motivations of "harassment and extortion" plainly constitute an "improper purpose", which "clearly amounts to bad faith".  *Stamford Comput. Grp. v. Metro. Opera Ass'n*, No. 01 Civ-2148 (SAS) (S.D.N.Y. Aug. 12, 2002) (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)).

At bottom, entertaining Plaintiffs' claim of waiver would be improper and would reward Plaintiffs' counsel's bad faith efforts to impose financial pain upon Amex unconnected to both the merits of their claims and their own costs of resolving the parties' disputes.

**V.    Amex Could Never Have Waived Its Right To Arbitrate Because the Claims Plaintiffs Plead Here Are Different than Those It Presented in Arbitration.**

"Only prior litigation of *the same legal and factual issues* as those the party now wants to arbitrate results in waiver of the right to arbitrate."  *FPE Found. v. Cohen*, 801 F.3d 25, 30 (1st Cir. 2015) (emphasis added) (citation omitted).  Here, there is a mismatch.  Therefore, Amex could not have waived its right to arbitrate the claims Plaintiffs bring in this litigation.

To demonstrate waiver of Amex's right to compel arbitration, Plaintiffs must show "the intentional relinquishment or abandonment of a *known* right".  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (emphasis added); *see also Jubilant Generics Ltd. v. Dechra Veterinary Prod.*, LLC, No. 2:23-CV-00237-JDL, 2024 WL 1329714, at *5 (D. Me. Mar. 28, 2024).  A "Defendant cannot be said to have 'known' that it could compel arbitration on claims that it did not even know existed."  *Musharbash v. JPMorgan Chase Bank*, No. 2:22-CV-02320-DAD-KJN, 2024 WL 919186, at *5 (E.D. Cal. Mar. 1, 2024).  A change in a complaint that

alters the "scope or theory of the claims" renders the claims different in nature such that Plaintiffs can no longer argue that waiver has taken place as to those claims. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997). For example, the Second Circuit has held that even a defendant's "explicit waiver of its right to arbitrate certain claims would not necessarily waive arbitration of other claims raised in an amended complaint filed after [defendant] agreed to this waiver." *Id.*

Thus, if a plaintiff changes course and pursues different claims, prior waivers no longer hold. Here, there has been no waiver at all. But there certainly has been no waiver where Plaintiffs now assert an entirely new basis of liability, claiming they "will show Amex has market power in the relevant market" (Compl. ¶ 44), when their arbitral Demands previously said the opposite, that "the indirect method [of antitrust proof] and market power concepts have no relevance to this case" (Barbur Decl. Ex. 4, Arb. Demands ¶ 51.) The mismatch here also extends to Plaintiffs' requested relief. In their Complaint, Plaintiffs add a new request for declaratory relief, and also request global "[i]njunctive relief directing American Express: to rescind its NDPs, . . . to modify accordingly all iterations of [Amex's] card acceptance rules . . . and to publish information sufficient to educate the general public concerning the permissible scope of credit card steering and surcharging." (Compl. at 20.)[11] That departs from their arbitral Demands, in which Plaintiffs sought as "complete relief", only an injunction "allow[ing] the

---

[11] The relief requested here is unavailable regardless of the effect of the bar on class litigation in the arbitration provision. As a matter of law, courts should not "provide relief to nonparties when a narrower remedy will fully protect the litigants". *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478 (1995). Thus, the fact that Plaintiffs could not seek such broad relief through arbitration is a red herring, because even putting aside the class action bar by which they are obligated to abide, such relief should be unavailable as a matter of law to this class of 5,155 merchants.

Claimant itself to freely steer and surcharge transactions" and "Claimant's competitors in its industry and geographic area to steer and surcharge".  (Barbur Decl. Ex. 4, Arb. Demands ¶ 59.)

Under no circumstance could Amex have waived its right to arbitrate claims that Plaintiffs never previously presented.  For this independent reason, the Court should compel Plaintiffs to arbitrate now.

## VI.    The Court Should Stay This Action Pending Arbitration.

After determining that the issues in the suit are "referable to arbitration", courts "shall on application of one of the parties stay the trial of the action until such arbitration has been had". 9 U.S.C. § 3; *see also Oliveira v. New Prime, Inc.*, 857 F.3d 7, 12 (1st Cir. 2017) ("[U]nder § 3, a party may obtain a stay of federal-court litigation pending arbitration.").  Because Plaintiffs' claims rightfully belong in arbitration, the Court should stay this action upon compelling arbitration.

## CONCLUSION

For the foregoing reasons, Amex requests that this Court issue an order compelling arbitration per the parties' contractual arbitration agreement and staying the instant action.

May 21, 2024

Respectfully submitted,

**WHELAN CORRENTE & FLANDERS,**

by

*/s/ Robert Clark Corrente*
Robert Clark Corrente

100 Westminster Street, Suite 710
Providence, RI 02903
(401) 270-4500

**CRAVATH, SWAINE & MOORE LLP**
Peter T. Barbur (*pro hac vice*)
Kevin J. Orsini (*pro hac vice*)
Helam Gebremariam (*pro hac vice*)
David H. Korn (*pro hac vice*)

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

*Attorneys for Defendants American Express
Company and American Express Travel
Related Services Company, Inc.*