UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

---

5-STAR GENERAL STORE aka BENTO LLC,
MARC ALLEN, INC., FAST FORWARD
MEDIA, INC., MEZE LLC, KENNEDY'S IRISH
PUB INC., CARDEN, INC., FRENCH FLORIST,
LLC, LUXE FURNITURE, INC., LUNA'S
HOSPITALITY GROUP, LLC, and THE GENT'S
PLACE MEN'S FINE GROOMING LLC, on
behalf of themselves and others similarly situated,

                                    Plaintiffs,

                    -against-

AMERICAN EXPRESS COMPANY and
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC.,

                                    Defendants.

---

Case No. 1:24-cv-00106

## DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' CLASS ACTION ALLEGATIONS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARD......................................................................................................... 5

ARGUMENT...................................................................................................................... 6

I.  PLAINTIFFS CANNOT PURSUE A MANDATORY, NO-OPT-OUT CLASS
    UNDER RULE 23(b)(2). ........................................................................................ 6

    A.  Plaintiffs Have Conceded There Is No Injunctive Relief for "the Class as a
        Whole". ...................................................................................................... 6

    B.  Plaintiffs' Requested Declaratory Relief Is Impermissibly Related to
        Damages, Not Injunctive Relief......................................................... 10

II. PLAINTIFFS CANNOT SHOW ASCERTAINABILITY UNDER RULE 23(a)............ 12

CONCLUSION................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accion Soc. de Puerto Rico, Inc. v. Viera Perez*,
    831 F.2d 365 (1st Cir. 1987)..................................................................................9

*American Express Co. v. Italian Colors Restaurant*,
    570 U.S. 228 (2013).............................................................................................8

*Bais Yaakov of Spring Valley v. ACT, INC.*,
    328 F.R.D. 6 (D. Mass. 2018), *aff'd*, 12 F.4th 81 (1st Cir. 2021) ..........................14

*Bearbones, Inc. v. Peerless Indem. Ins. Co.*,
    No. CV 3:15-30017-KAR, 2016 WL 5928799 (D. Mass. Oct. 11, 2016)................4

*Brown v. Trs. of Bos. Univ.*,
    891 F.2d 337 (1st Cir. 1989)................................................................................9

*Burley v. City of New York.*,
    No. 03 CIV.735(WHP), 2005 WL 668789 (S.D.N.Y. Mar. 23, 2005)...................13

*C.G.B. v. Wolf*,
    464 F. Supp. 3d 174 (D.D.C. 2020).....................................................................12

*Califano v. Yamasaki*,
    442 U.S. 682 (1979).............................................................................................9

*Campbell v. First Am. Title Ins. Co.*,
    269 F.R.D. 68 (D. Me. 2010)...............................................................6, 8, 12, 14

*DeRosa v. Mass. Bay Commuter Rail Co.*,
    694 F. Supp. 2d 87 (D. Mass. 2010).....................................................................6

*FPE Found. v. Cohen*,
    801 F.3d 25 (1st Cir. 2015)...................................................................................7

*George Lussier Enters., Inc. v. Subaru of New Eng., Inc.*,
    No. CIV. 99-109-B, 2001 WL 920060 (D.N.H. Aug. 3, 2001)..............................11

*Glynn v. Me. Oxy-Acetylene Supply Co.*,
    No. 2:19-CV-00176-NT, 2020 WL 6528072 (D. Me. Nov. 5, 2020).....................11

*Gulino v. Bd. of Educ. of the City Sch. Dist. of N.Y.*,
    907 F. Supp. 2d 492 (S.D.N.Y. 2013)..................................................................12

*Harrington v. City of Nashua*,
    610 F.3d 24 (1st Cir. 2010) ....................................................................................9

*Harris v. Med. Transp. Mgmt., Inc.*,
    77 F.4th 746 (D.C. Cir. 2023), *cert. denied sub nom. Med. Transp. v. Harris*, No. 23-
    658, 2024 WL 674822 (U.S. Feb. 20, 2024) ...........................................................6

*In re Bank of Am. Home Affordable Modification Program (HAMP) Cont. Litig.*,
    No. MDL 10-2193-RWZ, 2013 WL 4759649 (D. Mass. Sept. 4, 2013) ...............10

*In re Fosamax Prods. Liab. Litig.*,
    248 F.R.D. 389 (S.D.N.Y. 2008) ...........................................................................13

*In re Intuniv Antitrust Litig.*,
    No. 1:16-CV-12396-ADB, 2019 WL 3947262 (D. Mass. Aug. 21, 2019) ............12

*In re New Motor Vehicles Can. Exp. Antitrust Litig.*,
    No. MDL 1532, 2006 WL 623591 (D. Me. Mar. 10, 2006) .....................................9

*Kent v. SunAmerica Life Ins. Co.*,
    190 F.R.D. 271 (D. Mass. 2000) ............................................................................13

*Manning v. Bos. Med. Ctr. Corp.*,
    725 F.3d 34 (1st Cir. 2013) ......................................................................................5

*Manson v. GMAC Mortg., LLC*,
    283 F.R.D. 30 (D. Mass. 2012) ..............................................................................12

*Mogel v. Unum Life Ins. Co. of Am.*,
    646 F. Supp. 2d 177 (D. Mass. 2009) ................................................................6, 10

*Monteferrante v. Williams-Sonoma, Inc.*,
    241 F. Supp. 3d 264 (D. Mass. 2017) ......................................................................5

*Mr. Dee's Inc. v. Inmar, Inc.*,
    No. 1:19CV141, 2022 WL 1750537 (M.D.N.C. Apr. 27, 2022) .............................14

*MSP Recovery Claims, Series LLC & Series 17-04-631 v. Plymouth Rock Assurance
    Corp., Inc.*,
    404 F. Supp. 3d 470 (D. Mass. 2019) ..................................................................5, 15

*MSP Recovery Claims, Series LLC v. Plymouth Rock Assurance Corp., Inc.*,
    No. 1:18-CV-11702-ADB, 2019 WL 6791962 (D. Mass. Dec. 12, 2019) ........15, 16

*Musharbash v. JPMorgan Chase Bank*,
    No. 22-CV-02320-DAD-KJN, 2024 WL 919186 (E.D. Cal. Mar. 1, 2024) ............8

*Nieves Domenech v. Dymax Corp.*,
    952 F. Supp. 57 (D.P.R. 1996) ..................................................................9

*O'Hara v. Diageo-Guinness, USA, Inc.*,
    306 F. Supp. 3d 441 (D. Mass. 2018) .......................................................15

*Ohio v. Am. Express Co.*,
    585 U.S. 529 (2018) .....................................................................................1

*Peacock v. Pabst Brewing Co., LLC*,
    No. 218CV00568TLNCKD, 2022 WL 2160244 (E.D. Cal. June 15, 2022)............7

*Pimentel v. City of Methuen*,
    No. CV 17-11921-FDS, 2019 WL 6699667 (D. Mass. Dec. 9, 2019) ............14, 15

*Powers v. Gov't Emps. Ins. Co.*,
    192 F.R.D. 313 (S.D. Fla. 1998) ...............................................................11

*Rivera v. Exeter Fin. Corp.*,
    829 F. App'x 887 (10th Cir. 2020) .............................................................13

*Roy v. Fedex Ground Package Sys., Inc.*,
    353 F. Supp. 3d 43 (D. Mass. 2018) ...........................................................14

*Ruiz v. NEI Gen. Contracting, Inc.*,
    No. CV 21-11722-WGY, 2024 WL 869445 (D. Mass. Feb. 29, 2024)................14

*Sarafin v. Sears, Roebuck & Co.*,
    446 F. Supp. 611 (N.D. Ill. 1978) ..............................................................11

*Schuster v. Harbor*,
    471 F. Supp. 3d 411 (D. Mass. 2020) ........................................................4, 8

*Senne v. Kansas City Royals Baseball Corp.*,
    315 F.R.D. 523 (N.D. Cal. 2016), *on reconsideration in part*, No. 14-CV-00608-JCS,
    2017 WL 897338 (N.D. Cal. Mar. 7, 2017), *aff'd in part, rev'd in part and remanded*,
    934 F.3d 918 (9th Cir. 2019) ................................................................14, 15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...........................................................................7, 10, 12

**Statutes & Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................4

Fed. R. Civ. P. 12(f).................................................................................1, 4, 5

Fed. R. Civ. P. 23(a) ...........................................................................2, 6, 12, 16

Fed. R. Civ. P. 23(b) ...................................................................................................6

Fed. R. Civ. P. 23(b)(2) ..................................................................................... passim

Fed. R. Civ. P. 23(c)(4) ............................................................................................3, 6

Fed. R. Civ. P. 23(d)(1)(D) ......................................................................................1, 5

Pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D), Defendants American Express Company and American Express Travel Related Services Company, Inc. (together, "Amex") move to strike all class action allegations from the Class Action Complaint (Dkt. No. 1) (the "Complaint").

## PRELIMINARY STATEMENT

This is the latest in a long line of cases mounting antitrust challenges to the non-discrimination provisions that govern a merchant's acceptance of American Express cards. Amex has prevailed in all of these cases, including one that reached the U.S. Supreme Court.[1] The ten Plaintiffs here, and the class of merchants they purport to represent, previously pursued cookie-cutter individual arbitration claims against Amex as part of a so-called "mass arbitration". These Plaintiffs, having engineered an administrative closure of their individual arbitrations, now have come to court claiming Amex supposedly waived its right to arbitration. Plaintiffs' "waiver" arguments are frivolous, as Amex has been (and remains) ready, willing and able to arbitrate. Thus, Amex is contemporaneously filing a Motion to Compel Arbitration that includes a detailed discussion of the relevant facts and law showing these claims belong in arbitration. Because the Court should compel arbitration, it need not reach the issues presented in this motion to strike.

But if this Court were the proper forum for Plaintiffs' claims, this motion makes the threshold point that all class-action allegations must be struck because they are based on two incurable legal errors.

*First*, Plaintiffs seek to certify only a mandatory, no-opt-out class under Rule 23(b)(2), but Plaintiffs are not pursuing "injunctive relief or corresponding declaratory relief that is

---

[1] *See Ohio v. Am. Express Co.*, 585 U.S. 529 (2018).

appropriate respecting the class *as a whole*".  Fed. R. Civ. P. 23(b)(2) (emphasis added).  With respect to injunctive relief, Plaintiffs' underlying individual arbitration Demands asserted that each Plaintiff required an individualized injunction tailored to the individual Claimant (each of whom is a small merchant) and its geographic competitors.  That is the opposite of injunctive relief "respecting the class as a whole".  *Id.*  Plaintiffs cannot now walk away from their prior allegations and bring new, inconsistent claims, especially when doing so confirms that Amex cannot have waived its right to arbitrate.  Nor can Plaintiffs claim to satisfy Rule 23(b)(2) because they are seeking "declaratory relief".  Here, Plaintiffs' claim for declaratory relief is in support of future *damages* claims, which Rule 23(b)(2) forbids.  This rule is about due process: if a claim like this could be certified as a mandatory Rule 23(b)(2) class, a loss on the merits for the Plaintiffs' class would extinguish absent class members' rights to pursue damages claims even though they would not have been permitted to opt out of the class.  Here, Plaintiffs are wrong to rely on Rule 23(b)(2) as a matter of law and, because the only class allegations they bring are under Rule 23(b)(2), all class allegations should be stricken.

*Second*, as an independent ground for striking all of Plaintiffs' class allegations, Plaintiffs cannot satisfy Rule 23(a) because the putative class here is not ascertainable.  Here, the class definition turns on a legal determination—whether Amex has "waived" its right to arbitrate—not any objective criteria.  Classes based on this type of legal definition are improper as a matter of law.

Accordingly, to the extent the Court does not compel Plaintiffs to arbitrate their claims, Amex requests that this Court strike all of Plaintiffs' class claims.

## BACKGROUND

Plaintiffs challenge Amex's non-discrimination provisions ("NDPs"), which govern a merchant's acceptance of American Express cards.  (Compl. ¶ 32.)  Plaintiffs allege that the

NDPs impermissibly restrict a merchant's ability to engage in steering and surcharging and thus seek injunctions permitting such activity. (*See, e.g.*, *id.* ¶ 59.) Steering includes a variety of activities—such as oral instruction, signage or pricing—that merchants can utilize to discourage cardholders from using their preferred payment method. (*See id.* ¶ 32.) Surcharging is a form of steering, whereby a merchant imposes an additional fee, for example on Amex products or on credit card transactions entirely, to discourage consumers from using their preferred form of payment. (*Id.*)

Plaintiffs assert a putative class defined as follows:

> The proposed class is comprised of the 5,155 merchants described above, as to each of which Amex has waived the right to compel arbitration (the "Class"). Each member of the Class accepts Amex-branded payment cards pursuant to the terms set forth in the MOG [American Express's Merchant Operating Guide], including the NDPs, and has standing to seek injunctive relief rescinding the NDPs.

(*Id.* ¶ 62.) Plaintiffs seek to certify classes for two types of relief:

> **An Injunctive Relief Class:** "Plaintiffs bring this action as a class action under Fed. R. Civ. P. 23(b)(2), to restrain Amex's ongoing unlawful practices".

> **And a Declaratory Relief Class:** Plaintiffs bring this action "under Fed. R. Civ. P. 23(c)(4) to obtain a judicial declaration establishing Amex's liability and enabling class members to prosecute their claims for compensation in separate proceedings before courts and/or arbitral bodies of competent jurisdiction".

(*Id.* ¶ 61.)

In terms of injunctive relief, Plaintiffs seek an order:

> directing American Express: to rescind its NDPs, to an extent to be determined at trial; to modify accordingly all iterations of the card acceptance rules that Amex publishes on its websites, including the MOG; and to publish information sufficient to educate the general public concerning the permissible scope of credit card steering and surcharging[.]

(*Id.* at 20.)

In terms of declaratory relief, Plaintiffs seek "a judicial declaration that American Express has violated Section One of the Sherman Act". (*Id.*) In particular, Plaintiffs allege that such a declaration would:

> materially advance the resolution of each Class member's individual suit for damages. If liability is established, each Class member may then pursue its individual damages claim in simplified proceedings, whether before this Court or another court or arbitrator having jurisdiction. If Amex wins, the claims will be disposed of by res judicata. Either way, class treatment will "materially advance multiple civil claims by addressing the core of the dispute in a manner superior to other realistic procedural alternatives, so as to generate significant judicial efficiencies."

(*Id.* ¶ 68 (quoting ALI Principles of the Law of Aggregate Litigation §2.02 (2010)).)

Plaintiffs claim they are entitled to sue in Court, rather than in individual arbitrations, because Amex supposedly waived the right to arbitrate certain claims previously submitted to the American Arbitration Association ("AAA"). The same counsel that represents Plaintiffs here submitted 5,155 identical Demands to AAA—one for each of the purported class members here. Each Demand asserted federal antitrust claims challenging the NDPs under the Sherman Act. However, the claims asserted in the Complaint in this case differ from the arbitration Demands in certain important respects.[2] Most importantly to this motion, in their arbitration Demands, each Claimant sought an injunction that is tailored to the individual Claimant and its local

---

[2] "When reviewing a motion to dismiss under Rule 12(b)(6), the Court 'may consider documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint'". *Schuster v. Harbor*, 471 F. Supp. 3d 411, 416 (D. Mass. 2020) (quoting *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007)). This 12(b)(6) standard applies to motions to strike brought pursuant to Rule 12(f). *See Bearbones, Inc. v. Peerless Indem. Ins. Co.*, No. CV 3:15-30017-KAR, 2016 WL 5928799, at *9 (D. Mass. Oct. 11, 2016). The Demands filed with AAA are both central to this dispute and are referenced throughout Plaintiffs' Complaint. (*See, e.g.*, Compl. ¶ 8.)

4

competitors.[3] Specifically, Claimants (Plaintiffs included) alleged that "complete relief" would be achieved by "allow[ing] the Claimant itself to freely steer and surcharge transactions" and "Claimant's competitors in its industry and geographic area to steer and surcharge". (Barbur Decl. Ex. 1, Arb. Demands ¶ 59.)

## LEGAL STANDARD

Pursuant to its powers under Federal Rule of Civil Procedure 12(f), this Court has the power to strike legally deficient class allegations from Plaintiffs' pleadings. "If it is obvious from the pleadings that the proceeding cannot possibly move forward on a class-wide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013). Similarly, under Rule 23(d)(1)(D), a court has the power to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly". "Rule 23(d)(1)(D) permits courts to order deletion of portions [of] a complaint's class claims once it becomes clear that the plaintiffs cannot possibly prove the deleted portion of those claims, at least where the basis for the motion to strike is distinct from the factors the court would consider on a motion for class certification." *Monteferrante v. Williams-Sonoma, Inc.*, 241 F. Supp. 3d 264, 269 (D. Mass. 2017) (citation omitted).

Whether courts exercise their power under Rule 12(f) or Rule 23(d)(1)(D) to strike or require the removal of class allegations turns on whether the claimed defects in the class allegations are obvious. While courts use caution in striking allegations if they might be supported by discovery, "[s]ometimes, however, 'the issues are plain enough from the pleadings

---

[3] For instance, Plaintiff 5-Star General Store is a deli and general store in Pawtucket, Rhode Island, and Plaintiff Meze LLC is a Greek restaurant in Worcester, Massachusetts. The other Claimants similarly are small merchants with a small geographic footprint.

to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim.'" *MSP Recovery Claims, Series LLC & Series 17-04-631 v. Plymouth Rock Assurance Corp., Inc.*, 404 F. Supp. 3d 470, 484 (D. Mass. 2019) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).  That is the case here.

## ARGUMENT

Plaintiffs seek to certify two separate classes under Rule 23(b)(2):  one seeking injunctive relief and the other seeking declaratory relief.  (Compl. ¶ 61.)[4]  For either class to be viable, Plaintiffs "must establish the four elements of Rule 23(a) and one of several elements of Rule 23(b)".  *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 95 (D. Mass. 2010) (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003)).  Here, the putative class cannot satisfy either Rule 23(a) or Rule 23(b).

## I.    PLAINTIFFS CANNOT PURSUE A MANDATORY, NO-OPT-OUT CLASS UNDER RULE 23(B)(2).

### A.    Plaintiffs Have Conceded There Is No Injunctive Relief for "the Class as a Whole".

Under Rule 23(b)(2), injunctive relief must be "appropriate respecting the class as a whole".  Fed. R. Civ. P. 23(b)(2); *see also Mogel v. Unum Life Ins. Co. of Am.*, 646 F. Supp. 2d 177, 182 (D. Mass. 2009).  That means certification of a Rule 23(b)(2) injunctive class is appropriate only "where broad, class-wide injunctive . . .  relief is ***necessary*** to redress a group-wide injury".  *Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 77 (D. Me. 2010) (emphasis

---

[4] Plaintiffs' reference to Rule 23(c)(4) is a red herring, because Plaintiffs' declaratory relief class can only be certified if it satisfies Rule 23(b)(2).  Although Rule 23(c)(4) allows class actions to isolate a "particular issue[]" for class consideration, "there is no freestanding class to be certified under Rule 23(c)(4)".  *Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 757-58 (D.C. Cir. 2023), *cert. denied sub nom. Med. Transp. v. Harris*, No. 23-658, 2024 WL 674822 (U.S. Feb. 20, 2024).  Plaintiffs must allege that their class is "maintainable under one of Rule 23(b)'s categories".  *Id.*

added) (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 162 (2d Cir. 2001)).

Thus, Rule 23(b)(2) "does not authorize class certification when each individual class member *would be entitled to a different injunction* . . . against the defendant". *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011) (emphasis added); *see also Peacock v. Pabst Brewing Co., LLC*, No. 218CV00568TLNCKD, 2022 WL 2160244, at *2 (E.D. Cal. June 15, 2022) (explaining that "Rule 23(b)(2) certification is not warranted when each class member is *otherwise entitled* to individualized relief, whether in the form of monetary damages or individual injunctions" (emphasis added)).

Here, the underlying arbitration Demands as to which waiver is asserted seek injunctions that are tailored to each individual merchant. Specifically, each Demand requests an injunction that enjoins Amex's enforcement of the NDPs to the extent necessary to "allo[w] the Claimant itself to freely steer and surcharge transactions," and also to "allo[w] Claimant's competitors in its industry and geographic area to steer and surcharge". (Barbur Decl. Ex. 1, Arb. Demands ¶ 59.) Moreover, each Demand alleges that such tailored injunctive relief—not class-wide injunctive relief—is all that is necessary to provide the "complete relief require[d]". (*Id.*)

These underlying Demands define the scope of any potential injunctive relief that can be awarded in this case because, as discussed in Amex's Motion to Compel (*see* Mot. to Compel at 18-20), any purported waiver of the obligation to arbitrate would necessarily be limited to what is alleged in those Demands. It is thus irrelevant that the Complaint in this action includes different allegations concerning injunctive relief, which span broader than each individual merchant and its geographic competitors. (Compl. ¶ 67.) What matters is that the underlying arbitration Demands do not seek such relief—they seek individualized injunctive relief. *See FPE Found. v. Cohen*, 801 F.3d 25, 30 (1st Cir. 2015) (holding that party only waived arbitration as to

"the same *legal and factual* issues" previously litigated (emphasis added) (citation and quotations omitted)); *see also Musharbash v. JPMorgan Chase Bank*, No. 22-CV-02320-DAD-KJN, 2024 WL 919186, at *5 (E.D. Cal. Mar. 1, 2024) (holding that a "Defendant cannot be said to have 'known' that it could compel arbitration on claims that it did not even know existed", such as the new injunctive claims Plaintiffs raise in their Complaint here).  Nor can Plaintiffs now seek to justify this broader relief by claiming it applies "with respect to the Class as a whole".  (Compl. ¶ 67.)  Because Plaintiffs never sought "injunctive relief with respect to the Class as a whole" in any of their 5,155 individual arbitrations, they cannot possibly claim that any of Amex's conduct with respect to those arbitrations was a waiver of Amex's right to arbitrate that issue.[5]  For this reason alone, Plaintiffs cannot pursue such relief in this Court on any theory of waiver.

At the same time, Plaintiffs' Demands concede that their requested injunctive relief is not "necessary", *Campbell*, 269 F.R.D. at 77 (citation and quotations omitted), to provide relief to the class "as a whole" under Federal Rule of Civil Procedure 23(b)(2).  Indeed, as Claimants themselves pleaded in their arbitration Demands, "complete relief" requires no more than an injunction that runs to the individual merchant Claimants and their geographic competitors.

---

[5] In fact, such relief is specifically prohibited by arbitration agreement Plaintiffs are subject to.  *See* Barbur Decl. Ex. 2, October 2023, Amex Merchant Operating Guide § 13.1(c) ("[N]either you nor we have the right to participate in a representative capacity or as a member of any class pertaining to any Claim subject to arbitration.").  Amex's Merchant Operating Guide is referenced into the complaint (*See* Compl. ¶ 31), and therefore can be taken into consideration by this Court on a motion to strike, *Schuster*, 471 F. Supp. 3d at 416.  As the Supreme Court made clear in *American Express Co. v. Italian Colors Restaurant*, this form of class-action waiver in arbitration agreements is not only permissible, it also ensures the preservation of the principle benefits of arbitration—"its informality" and tendency for "speedy resolution".  570 U.S. 228, 235-39 (2013).

(Barbur Decl. Ex. 1, Arb. Demands ¶ 59 ("In this case, complete relief requires an injunctive award that not only allows the Claimant itself to freely steer and surcharge transactions, but that further allows Claimant's competitors in its industry and geographic area to steer and surcharge.")  Claimants' statements in their Demands are judicial admissions.  *Harrington v. City of Nashua*, 610 F.3d 24, 31 (1st Cir. 2010) ("Ordinarily, a pleading admitting a fact alleged in an antecedent pleading is treated as a binding judicial admission, removing the fact from contention for the duration of the litigation."); *Nieves Domenech v. Dymax Corp.*, 952 F. Supp. 57, 61 (D.P.R. 1996) ("A litigant's assertions of fact in a pleading constitute[] a judicial admission by which the party is normally bound throughout the proceeding.").  Claimants cannot now renege that concession, as the law is clear:  "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  "An injunction should be narrowly tailored to give only the relief to which plaintiffs are entitled."  *Brown v. Trs. of Bos. Univ.*, 891 F.2d 337, 361 (1st Cir. 1989); *see also Accion Soc. de Puerto Rico, Inc. v. Viera Perez*, 831 F.2d 365, 372 (1st Cir. 1987) ("[T]he scope of injunctive relief is dictated by the extent of the violation established . . . [and] the relief afforded [may not be] more burdensome than necessary to redress the complaining parties." (second and third alterations in original) (quoting *Lynch v. Dukakis*, 719 F.2d 504, 514 (1st Cir. 1983))).  Here, the very fact that each Claimant previously asserted an individual claim seeking an individual injunction applying to itself and its geographic competitors illustrates that "complete relief" does not require an injunction "respecting the class as a whole".

When an "injunctive remedy must be individualized . . . the cohesiveness is lost, and [Rule] (b)(2) certification becomes inappropriate."  *In re New Motor Vehicles Can. Exp.*

*Antitrust Litig.*, No. MDL 1532, 2006 WL 623591, at *11 (D. Me. Mar. 10, 2006).  Thus, Plaintiffs' injunctive relief claims are unsupportable and must be stricken.

      B.     <u>Plaintiffs' Requested Declaratory Relief Is Impermissibly Related to Damages, Not Injunctive Relief.</u>

Plaintiffs seek a "judicial declaration establishing Amex's liability and enabling class members to prosecute their claims for compensation in separate proceedings before courts and/or arbitral bodies of competent jurisdiction".  (Compl. ¶ 61.)  However, Rule 23(b)(2) allows for certification of a class only when declaratory relief "correspond[s]" to injunctive relief.  Fed. R. Civ. P. 23(b)(2).  "Declaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief."  (1966 Advisory Comm. Note, Fed. R. Civ. P. 23.)  Here, not only does Plaintiffs' declaratory relief fail to correspond to injunctive relief, but instead it also serves the prohibited purpose of forming the basis for individual damages claims.

The Supreme Court made clear in *Wal-Mart v. Dukes* that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to *an individualized award of monetary damages*".  564 U.S. 338, 360-61 (2011) (emphasis added).  Furthermore, courts across the U.S., including those in the First Circuit, have clearly held that Rule 23(b)(2) cannot be used as an end-run or vehicle for subsequent damages actions.  "[A]n action seeking a declaration concerning defendant's conduct that appears designed simply to lay the basis for a damage award rather than injunctive relief would not qualify under Rule 23(b)(2)."  *In re Bank of Am. Home Affordable Modification Program (HAMP) Cont. Litig.*, No. MDL 10-2193-RWZ, 2013 WL 4759649, at *8 (D. Mass. Sept. 4, 2013) (quoting 7A Charles Alan Wright et al., Fed. Prac. & Proc. § 1775 (West 2013)); *Mogel*, 646 F. Supp. 2d at 184 (explaining that Rule 23(b)(2) certification is inappropriate where "the declaratory relief [Plaintiffs] seek serves only

to facilitate the award of damages" (quoting *Bolin v. Sears, Roebuck Co.*, 231 F.3d 970, 978 (5th Cir. 2000)); *see also Powers v. Gov't Emps. Ins. Co.*, 192 F.R.D. 313, 318 (S.D. Fla. 1998) ("It is clear that the declaratory relief sought by [plaintiffs] is equivalent to a request for a declaration of liability. The declaratory judgment count serves the ultimate goal of monetary restitution and is designed primarily to facilitate and ensure the satisfaction of monetary relief. Therefore, class certification under Rule 23(b)(2) is inappropriate."); *Sarafin v. Sears, Roebuck & Co.*, 446 F. Supp. 611, 615 (N.D. Ill. 1978) ("[T]he declaratory judgment should perform the same function as an injunction. It should not lay the basis for a later damage award.").

Here, Plaintiffs expressly allege that, "[i]f liability is established, each Class member may then pursue its *individual damages claim* in simplified proceedings whether before this Court or another court or arbitrator having jurisdiction" and that "declaring that Amex has violated federal antitrust laws would materially advance the resolution of each Class member's *individual suit for damages*". (Compl. ¶ 68 (emphases added).) That is improper. "[N]ominally" labeling relief as a "request for declaratory judgment" does not render the class certifiable under 23(b)(2), if all Plaintiffs request is a "declaration of past liability that could be sought in any case". *Glynn v. Me. Oxy-Acetylene Supply Co.*, No. 2:19-CV-00176-NT, 2020 WL 6528072, at *8 (D. Me. Nov. 5, 2020). Instead, Plaintiffs must show that their declaratory class seeks chiefly equitable relief—they fail to do so here. *George Lussier Enters., Inc. v. Subaru of New Eng., Inc.*, No. CIV. 99-109-B, 2001 WL 920060, at *6 (D.N.H. Aug. 3, 2001) ("The mere recitation of a request for [equitable] relief cannot transform damages claims into a Rule 23(b)(2) class action." (alteration in original) (quoting *Roebuck*, 231 F.3d at 978)).

Furthermore, Plaintiffs' declaratory judgment allegations raise serious due process concerns. Indeed, Plaintiffs concede that, "[i]f Amex wins the claims will be disposed of by res

judicata". (Compl. ¶ 68.)  At the same time, "[c]lasses certified under [Rule 23(b)(2)] are mandatory classes and have no right of opt-out." *Campbell*, 269 F.R.D. at 77.  "Rule [23] provides no opportunity for . . . (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action." *Dukes*, 564 U.S. at 362; *see also Manson v. GMAC Mortg., LLC*, 283 F.R.D. 30, 39 (D. Mass. 2012) (quoting *Dukes*, 564 U.S. at 361-62). "[C]ertification of a Rule 23(b)(2)" action also "precludes individual suits for the same injunctive or declaratory relief". *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 207 (D.D.C. 2020).

Under the plain words of the Complaint, the 5,155 merchants who are part of the purported class have no say regarding whether they must participate in this action, yet face the threat of the outcome in this case barring them from bringing present or future damages claims. That is improper because "Rule 23(b)(2) lacks the procedural safeguards necessary to ensure that all class members' due process rights are protected." *Gulino v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 907 F. Supp. 2d 492, 505 (S.D.N.Y. 2013) (citing *Dukes*, 564 U.S. at 361).  Therefore, Plaintiffs' declaratory relief class claims are brought for a prohibited purpose and must also be stricken.

## II.     PLAINTIFFS CANNOT SHOW ASCERTAINABILITY UNDER RULE 23(A).

All proposed class actions also must satisfy Rule 23(a), which Plaintiffs here can never do.  Rule 23(a) enumerates certain requirements—(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy— but then also requires that the class be "ascertainable", meaning it "is defined in terms of an objective criterion". *In re Intuniv Antitrust Litig.*, No. 1:16-CV-12396-ADB, 2019 WL 3947262, at *5 (D. Mass. Aug. 21, 2019) (quoting *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012)).  Here, Plaintiffs' class is not ascertainable because Plaintiffs have attempted to define it not using the requisite objective criteria—for example, by merchant type, geographic location, time period, etc.—but instead using a legal

determination:  whether or not Amex supposedly "waived" arbitration rights.  That is impermissible, because it does not provide potential class members, Amex or the Court with any clear sense of who is and is not in the class.

Plaintiffs define the class as "the 5,155 merchants described above, as to each of which Amex has waived the right to compel arbitration (the 'Class')".  (Compl. ¶ 62.)  A class is only ascertainable if it is identified by "stable and objective factors".  *Kent v. SunAmerica Life Ins. Co.*, 190 F.R.D. 271, 278 (D. Mass. 2000); *see also In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 397 (S.D.N.Y. 2008) ("An identifiable class exists if its members can be ascertained by reference to objective criteria." (quoting *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y.2002)).  "A class whose definition hinges on subjective determinations is incompatible with Rule 23's definiteness requirement." *Burley v. City of New York*, No. 03 CIV.735(WHP), 2005 WL 668789, at *28 (S.D.N.Y. Mar. 23, 2005).  Plaintiffs' class definition has two main elements—"5,155 merchants" and "as to which Amex has waived the right to compel arbitration".  (Compl. ¶ 62.)  Neither is "objective".

*First*, the former portion of Plaintiffs' definition specifies that the class comprises "5,155 merchants".  (Class Action Compl. ¶ 62.)  This simple enumeration of a set of merchant plaintiffs is comparable to attaching an excel sheet or list of purported class members.  However, a "list" of plaintiffs is not sufficient to provide objective criteria.  *See Rivera v. Exeter Fin. Corp.*, 829 F. App'x 887, 888 (10th Cir. 2020) (rejecting an attached list of names as sufficient to establish class definition).  Furthermore, "specifically identif[ying] each class member" does not salvage a class definition, if it ultimately requires a legal determination, which, as discussed

below, this class definition requires. *Mr. Dee's Inc. v. Inmar, Inc.*, No. 1:19CV141, 2022 WL 1750537, at *3 (M.D.N.C. Apr. 27, 2022).

*Second*, the latter part of the definition requires that the class include only merchants as to whom Amex has *waived the right to compel arbitration*—a legal determination, not an objective fact. A class that is "dependent upon a legal conclusion" is not ascertainable under Rule 23. *Campbell*, 269 F.R.D. at 74 (citations omitted); *see also Bais Yaakov of Spring Valley v. ACT, INC.*, 328 F.R.D. 6, 13 (D. Mass. 2018) (establishing that a class definition whose membership depended on whether an individual had "a valid claim" was "inappropriate" (citations omitted)), *aff'd*, 12 F.4th 81 (1st Cir. 2021). This is because "conditioning membership in the class" on "a legal conclusion" prevents a class from being defined based on "objective criteria". *Pimentel v. City of Methuen*, No. CV 17-11921-FDS, 2019 WL 6699667, at *3 (D. Mass. Dec. 9, 2019) (deleting legal terminology from class definition that otherwise included only objective criteria); *see also Ruiz v. NEI Gen. Contracting, Inc.*, No. CV 21-11722-WGY, 2024 WL 869445, at *4 (D. Mass. Feb. 29, 2024) (deeming a class defined in terms of "legal injury" impermissible under Rule 23 (citation omitted)).

Plaintiffs' proposed class hinges on this Court making a preliminary legal determination before membership can be ascertained: whether Amex waived its right to arbitration as to the enumerated members of the class. Under Plaintiffs' definition, if Amex has waived its right to arbitration, then a class exists; if it has not waived its right to arbitration, a class does not. Courts routinely refuse to permit classes that are defined based on such threshold legal determinations, which are often referred to as "fail safe" classes.[6] For example, in *Senne v. Kansas City Royals*

---

[6] Classes are often referred to as "fail safe" classes when "membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability". *Roy v. Fedex Ground Package Sys., Inc.*, 353 F. Supp. 3d 43,

*Baseball Corp.*, a group of baseball players bringing Fair Labor Standards Act claims proposed a

class defined as:  all individuals who "work or worked for MLB or any MLB franchise" during

the statutory period.  315 F.R.D. 523, 530-31 (N.D. Cal. 2016), *on reconsideration in part*, No.

14-CV-00608-JCS, 2017 WL 897338 (N.D. Cal. Mar. 7, 2017) (allowing certification of more

limited class that did not depend on a legal determination), *aff'd in part, rev'd in part and*

*remanded*, 934 F.3d 918 (9th Cir. 2019).  The Court declined to certify the class reasoning that

"because the class [wa]s defined on the basis of whether an individual performed 'work' in a

particular state, membership in the State Classes [would] turn on a threshold determination of

whether particular activities constituted 'work'" under the applicable legal standard.  *Id.* at 565.

The Court concluded that "defining a class in a manner that requires legal determinations to be

made to ascertain membership" at a case's outset would "be problematic under Rule 23" and

refused to certify the class in part based on these problems with ascertainability.  *Id.*

Although classes that suffer from this weakness can sometimes be remedied by "refining

the class definition", *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 468 (D. Mass.

2018), Plaintiffs' class is not susceptible to this type of reformulation.  Even if Plaintiffs deleted

the legal terminology of waiver from their class definition, they still would only seek to include

individuals as to whom they argue Amex waived the right to arbitration; but Plaintiffs cannot use

proxy language to condition class membership on the same legal conclusion of waiver.  *See MSP*

*Recovery Claims, Series LLC v. Plymouth Rock Assurance Corp., Inc.*, No. 1:18-CV-11702-

---

71 (D. Mass. 2018) (citations omitted); *MSP Recovery*, 404 F. Supp. 3d at 485 (explaining that
fail-safe classes "are impermissible because they make it 'virtually impossible for the Defendants
to ever win the case, with the intended class preclusive effects' as any class member against
whom Defendant succeeds is thereby excluded from the class" (quoting *In re Nexium Antitrust*
*Litig.*, 777 F.3d 9, 22 n.19 (1st Cir. 2015))).  However, any class defined on the basis of a "legal
conclusion" rather than objective criteria is improper.  *See Pimentel*, 2019 WL 6699667, at *3.

ADB, 2019 WL 6791962, at *4 (D. Mass. Dec. 12, 2019).  In short, any new definition would just "mirror" the elements of waiver.  *Id.* (denying plaintiffs' motion for reconsideration of the court's striking of class claims, because plaintiffs' proposed redefinition required a legal conclusion even though it utilized fact-based terminology).  In light of this improper definition, and of the lack of objective criteria in Plaintiffs' proposed class definition, the Court should strike Plaintiffs' class claims.

## CONCLUSION

For the reasons set forth above, Amex respectfully requests that this Court strike Plaintiffs' class action allegations because Plaintiffs cannot satisfy the requirements of Rule 23(b)(2) and 23(a).

May 21, 2024

Respectfully submitted,

**WHELAN CORRENTE & FLANDERS,**

by
*/s/Robert Clark Corrente*

Robert Clark Corrente

100 Westminster Street, Suite 710
Providence, RI 02903
(401) 270-4500

**CRAVATH, SWAINE & MOORE LLP**
*/s/ Peter T. Barbur*

Peter T. Barbur (*pro hac vice*)
Kevin J. Orsini (*pro hac vice*)
Helam Gebremariam (*pro hac vice*)
David H. Korn (*pro hac vice*)

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

*Attorneys for Defendants American Express
Company and American Express Travel
Related Services Company, Inc.*