**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| 5-STAR GENERAL STORE, ET AL.,<br>Plaintiffs,<br>v.<br>AMERICAN EXPRESS CO., ET AL.,<br>Defendants. | Case No. 24-cv-00106-MSM-LDA |

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE CLASS ACTION ALLEGATIONS

## TABLE OF CONTENTS

Introduction ........ 1

Background ........ 3

Argument ........ 5

I. The merchants seek injunctive relief respecting the class as a whole under Rule 23(b)(2) ........ 5

II. There is no basis for striking the merchants' claim for declaratory relief ........ 8

III. The class is ascertainable ........ 11

Conclusion ........ 12

## TABLE OF AUTHORITIES

**Cases**

*Berger v. Xerox Retirement Income Guarantee Plan,*
338 F.3d 755 (7th Cir. 2003) ..... 9

*Butler v. Sears, Roebuck and Co.*,
727 F.3d 796 (7th Cir. 2013) ..... 8

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ..... 8

*DDMB, Inc. v. Visa, Inc.*,
2021 WL 6221326 (E.D.N.Y. 2021) ..... 5

*Gunnells v. Healthplan Services, Inc.*,
348 F.3d 417 (4th Cir. 2003) ..... 10

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ..... 9

*In re McKesson Governmental Entities Average Wholesale Price Litigation*,
767 F. Supp. 2d 263 (D. Mass. 2011) ..... 9

*In re Nassau County Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006) ..... 10

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
522 F.3d 6 (1st Cir. 2008) ..... 8, 9

*In re Pharmaceutical Industries Average Wholesale Price Litigation*,
230 F.R.D. 61 (D. Mass. 2005) ..... 9

*In re Prograf Antitrust Litigation*,
2014 WL 4745954 (D. Mass. 2014) ..... 9

*Manning v. Boston Medical Center Corp.*,
725 F.3d 34 (1st Cir. 2013) ..... 1, 2, 7, 11

*Martin v. Behr Dayton Thermal Products LLC*,
896 F.3d 405 (6th Cir. 2018) ..... 10

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
672 F.3d 482 (7th Cir. 2012) ..... 10

*Phillips v. Sheriff of Cook County*,
828 F.3d 541 (7th Cir. 2016) .......... 10

*Rivera v. Exeter Financial Corp.*,
829 F. App'x 887 (10th Cir. 2020) .......... 11

*Roy v. Fedex Ground Package Systems, Inc.*,
353 F. Supp. 3d 43 (D. Mass. 2018) .......... 11

*Sogbuyi-Whitney v. Caremark PhC LLC*,
No. 23-cv-00055-MSM, 2024 WL 324552 (D.R.I. 2024) .......... 1, 5

*Tardiff v. Knox County*,
365 F.3d 1 (1st Cir. 2004) .......... 9

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) .......... 10

**Other Authorities**

Myriam Gilles & Gary Friedman,
*The Issue Class Revolution*,
101 B.U. L. Rev. 133 (2021) .......... 10

Newberg on Class Actions
(6th ed. 2023) .......... 10, 11

**Rules**

Federal Rule of Civil Procedure 23(b)(3) .......... 2, 8, 9

Federal Rule of Civil Procedure 23(c)(4) .......... 2, 8, 9

Federal Rule of Civil Procedure 23(b)(2) .......... 5

## INTRODUCTION

Amex doesn't dispute that a Rule 23(b)(2) class action is an appropriate vehicle for merchants seeking to eliminate Amex's anticompetitive rules against steering and surcharging. Yet that is precisely what this case seeks. Both here and in their prior demands before the American Arbitration Association, the merchants' core objective has been the same: to eliminate Amex rules that prevent competition among U.S. credit card networks. In their AAA demands and again in their complaint in this Court, the merchants explained how Amex's anti-steering and anti-surcharging rules effectively dictate the rules for the rest of the credit-card market. As a result, these rules prevent card networks from competing on the fees they charge merchants, sustaining the current swipe fees at an anticompetitive level. "If the Amex Rules were rescinded," the AAA demands alleged, Discover, another card company, "would want to aggressively pursue a strategy of lowering [its] prices." Dkt.18-5 ¶ 46. In both forums, the merchants sought injunctive relief that was as broad as necessary to remedy their harms from Amex's violation of the antitrust laws.

Instead of contending that the relief requested in the merchants' complaint in this Court is somehow inappropriate for a class action, Amex's motion advances a complex, multistep argument for why it believes the merchants' class allegations should be struck. But Amex is wrong at every step, and each error is independently sufficient to deny its motion to strike.

That is especially true given the high bar for such motions. As this Court has held, "[m]otions to dismiss class allegations are highly disfavored at the pleading stage." *Sogbuyi-Whitney v. Caremark PhC LLC*, No. 23-cv-00055-MSM, 2024 WL 324552, at *3 (D.R.I. 2024) (citing *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)). "[W]hile ruling on a motion to strike is committed to the district court's sound judgment, such motions are narrow in scope, disfavored in

practice, and not calculated readily to invoke the court's discretion." *Manning*, 725 F.3d at 59.[1] "This is so because striking a portion of a pleading is a drastic remedy and … it is often sought by the movant simply as a dilatory or harassing tactic." *Id.* And, as this case illustrates, defendants often use such motions to "preemptively" litigate questions reserved for well down the road, such as the scope and nature of relief. *Id.* Thus, "a court should typically await the development of a factual record before determining whether the case should move forward on a representative basis." *Id.*

Amex doesn't come close to showing why any different result is warranted here. *First*, Amex claims that any waiver of the right to arbitration must be limited to the exact relief the merchants sought before the AAA. That's incorrect. The company's waiver extends to the merchants' antitrust claims—which are the same before both forums—not to every detail of the relief sought. *Second*, Amex asserts that the merchants only sought more limited, merchant-specific relief before the AAA. That is also wrong. In both forums, the merchants explained that the arbitrator or this Court should grant relief that is as broad as necessary to remedy Amex's antitrust violations. And in both forums the merchants explained how Amex's rules generally prevent competition from breaking out in the market. *Third*, the company contends that merchant-specific relief would preclude this case from proceeding as a class. But even if Amex were right that the merchants were limited to narrower relief, this still isn't true. Under both Federal Rule of Civil Procedure 23(b)(3) and Federal Rule of Civil Procedure 23(c)(4), this Court could either grant relief classwide or make a liability determination that would be the basis for separate determinations of injunctive relief.

Amex's other arguments are just as unavailing. The merchants are properly seeking a classwide determination of liability issues under Rule 23(c)(4), which permits courts to certify what

[1] Unless otherwise noted, all internal quotation marks, citations, alterations, brackets, and ellipses have been omitted from quotations throughout this brief.

is called an "issue class." Amex claims that this is improper because the merchants will rely on a liability finding in future damages cases. But the whole point of classwide declaratory relief, as numerous courts have recognized, is to determine liability on a class basis so that plaintiffs can take that ruling and proceed to whatever venue is appropriate for their individual claims.

Finally, Amex makes a strained argument that the class here is not ascertainable, even though every member of the class plainly can be (and has already been) ascertained based on objective criteria. The class consists of 5-Star General Store & Deli in Pawtucket and thousands of other small merchants who accept Amex cards, brought arbitrations before the AAA, and had their arbitrations terminated after Amex refused to pay its filing fees.

## BACKGROUND

When the merchants filed their antitrust claims before the AAA, they sought injunctive relief that was as broad as necessary to remedy Amex's antitrust violations. And they gave two core reasons that broad relief was necessary.[2]

*First*, the merchants explained why it was not enough that they simply be allowed to each use steering and surcharging tools in their own businesses. Dkt. 18-5 ¶ 59. It's true that if the merchant chooses to implement these tools, it can reduce its own costs by guiding consumers to use cheaper methods of payment. So, for example, 5-Star General Store could put up a sign informing its customers that it costs the store more money when they use Amex. Or, if a merchant chooses to impose surcharges on credit-card transactions, it can recoup a portion of the swipe fees it incurs. But for this steering to be effective in practice, the merchants explained that "complete relief requires an injunctive award that not only allows the Claimant itself to freely steer and

[2] A more detailed description of the background of this case can be found in the merchants' opposition to Amex's motion to compel arbitration, which is being filed simultaneously. The background here focuses solely on the facts relevant to the motion to strike.

surcharge transactions, but that further allows Claimant's competitors in its industry and geographic area to steer and surcharge." *Id*. That's because if a merchant imposes surcharges but none of its neighbors or competitors can do so, it risks alienating customers and losing business.

*Second*, in addition, each merchant explained how precluding Amex from applying the challenged rules was needed to spur price competition among the credit-card networks. *Id.* ¶¶ 43–47. This benefit—opening the door to network competition—is distinct from the benefit of obtaining steering and surcharging tools. Whether a particular merchant uses the steering and surcharging tools or not, that merchant will benefit from the reduced swipe fees that come from increased network competition. And this additional benefit could be quite significant indeed, since the stores could obtain lower swipe fees without having to risk taking a hit to sales by engaging in practices like surcharging.

To that end, the merchants alleged that the challenged rules "protect all four credit-card networks—Amex, Discover, Mastercard and Visa—from having to compete with one another on merchant fees." *Id.* ¶ 10; *see also id*. ¶ 12 (with the Amex rules in place, executives have testified, "[no] one's business strategy is to be cheaper than the next guy" and "lowering your price … does not drive incremental sales" because merchants have no ability to steer transactions to the low-cost network); *id.* ¶ 13 ("no competitor can gain market share by offering lower prices to merchants, even if it also offers competitive rewards to cardholders," because of the challenged rules); *id.* ¶ 46 ("If the Amex Rules were rescinded, [Discover CEO] Hochschild testified, Discover would want to 'aggressively pursue a strategy of lowering our prices and providing incentives to merchants that would steer volume to Discover.'"); *id.* ¶ 46 ("[A] lowest-cost provider strategy cannot succeed in the network services market if merchants are unable to shift share among the various networks."). Thus, the AAA demands sought: "Injunctive relief preventing American Express from enforcing

the Amex Rules against Claimant and against such other merchants as may be necessary to afford Claimant complete relief." *Id.* at 15 ¶¶ A–E.

After the AAA terminated the parties' arbitration due to Amex's nonpayment, the merchants brought the same antitrust claims in this Court. Dkt. 1 ¶¶ 69–73. They again explained how Amex's anti-steering and anti-surcharge rules effectively set the rules for the entire market. *Id.* ¶¶ 4–6, 33–34, 49–50. And they again sought injunctive relief that would be as broad as necessary to remedy the anti-competitive effects of Amex's anti-competitive rules: "Injunctive relief directing American Express: to rescind its [anti-steering and anti-surcharge provisions], to an extent to be determined at trial." Dkt. 1 at 20.

## ARGUMENT

### I. The merchants seek injunctive relief respecting the class as a whole under Rule 23(b)(2).

Amex does not dispute that the relief the merchants seek in their complaint here is suitable for class treatment under Federal Rule of Civil Procedure 23(b)(2). Nor could Amex plausibly do so. *See, e.g.*, *DDMB, Inc. v. Visa, Inc.*, 2021 WL 6221326 (E.D.N.Y. 2021) (certifying injunctive class of card-accepting merchants, under Rule 23(b)(2), challenging Visa and Mastercard's rules against steering and surcharging). Instead, Amex advances a convoluted argument predicated on the same mistaken premises as the company's motion to compel arbitration. This falls well short of warranting this Court's exercise of its discretion to grant Amex's "highly disfavored" attempt to strike the merchants' class allegations "at the pleading stage." *Sogbuyi-Whitney*, No. 23-cv-00055-MSM, 2024 WL 324552, at *3.

**1.** The first premise of Amex's argument is that the merchants are limited to the identical articulation of the relief they sought in their AAA demands. But as the merchants explain in detail in their opposition to Amex's motion to compel arbitration, the company's waiver extends to the

merchants' claims under federal antitrust law, not every detail of the relief sought. *See* Mot. Compel Opp. 23–26 (compiling cases).

**2.** The second step of Amex's argument also fails. Contrary to the company's arguments, the merchants *did* seek the same relief in their AAA demands that they seek before this Court. *See supra* 3–5. Indeed, the merchants' demands filed in AAA provided more than adequate notice that the merchants would seek the same kind of broad relief at the remedial stage as they do here. And in both forums the merchants made clear that "[t]he question of just how broad an injunction must be to deliver meaningful relief is an issue for the Arbitrator," Dkt. 18-5 ¶ 59, or "this Court," Dkt. 1 at 20–21.

Amex ignores the merchants' objective of removing impediments to network price competition and focuses myopically on the merchants' efforts to obtain steering tools that they can use in their respective businesses. To do so, Amex selectively quotes language from the following statement in the merchants' demands for arbitration:

> complete relief requires an injunctive award that not only allows the Claimant itself to freely steer and surcharge transactions, but that further allows Claimant's competitors in its industry and geographic area to steer and surcharge. It does little good for a merchant to be the only business in its town or industry that can surcharge.

Dkt. 18-5 ¶ 59; Amex Br. 5, 7–9.[3]

When read as a whole, this passage relates only to the effort to ensure a merchant can actually use steering tools in its business. It makes the point that "it does little good" to give a merchant such rights if neighboring and competing merchants lack the same rights. If a merchant imposes surcharges but none of its neighbors or competitors do, it risks alienating customers. But nothing in the quoted passage purports to limit this relief. To the contrary, the very next sentence

[3] Unless otherwise specified, all citations in this brief to Amex's brief refer to Amex's motion to strike. Dkt. 19.

states that "[t]he question of just how broad an injunction must be to deliver meaningful relief is an issue for the Arbitrator." Dkt. 18-5 ¶ 59. That is consistent with the AAA rules, which expressly provide that: "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties." Ex. B at 31, R-49(a).[4]

Nor does the section Amex selectively quotes somehow abandon the primary objective of the merchants' claims—namely, to remove the Amex rules that foreclose price competition among credit-card networks. As the AAA demands made clear, it is only "if the Amex rules were *rescinded*" that networks would be moved to engage in competition. Dkt. 18-5 ¶ 46 (emphasis added). If Amex had paid its fees and these cases had proceeded in arbitration, it would have come as no surprise if at the remedial stage, the merchants could and would seek rescission of the challenged rules across the board.

Finally, Amex's suggestion that the relief sought is not "narrowly tailored" or "necessary" to provide relief "to the class as a whole" is meritless. Amex Br. at 8–9. This argument is entirely premature, since the question of the scope of necessary injunctive relief is well downstream and not suitable for resolution on a motion to strike. *See, e.g.*, *Manning*, 725 F.3d at 59. It's also wrong. The class as a whole will benefit from the reduced swipe fees that will flow from an injunction removing impediments to competition. That is because the only significant impediment to network price competition, now that Visa and Mastercard have rescinded their own anticompetitive rules in response to litigation, is the Amex rules. *See* Dkt. 1 at ¶¶ 4–6, 33–34, 49–50. And if Amex believes there is a narrower injunction that will usher in network price competition and afford the

[4] Unless otherwise specified, all exhibit citations refer to exhibits to the Declaration of Scott C. Harris, filed in support of this opposition.

merchants full relief, it will have the chance to explain what that might be at the remedial stage of this litigation—not now.

**3.** Third and finally, even if Amex were correct both that the merchants are limited to the exact relief they sought in arbitration *and* that this relief was narrower than the relief sought in the complaint, that still wouldn't preclude class treatment. Once again, it is premature to predetermine the scope of relief at the outset of the litigation, and after a finding of liability, this Court will have the ability to fashion more limited relief for the merchants that would be uniform across the class. And to the extent further individualized determinations were necessary for injunctive relief, under Rule 23(c)(4), the Court could still make a liability determination that would serve as the basis for individual injunctive relief adjudications down the road. *See infra* 8–11.

In sum, from start to finish, Amex does not come close to meeting the high bar for invoking this Court's discretion to strike the merchants' class allegations seeking injunctive relief.

## II. There is no basis for striking the merchants' claim for declaratory relief.

Amex's attempts to strike the merchants' request for class-wide declaratory relief similarly fails to meet the company's heavy burden. Rule 23(c)(4) provides: "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Courts recognize that so-called "issue classes" under this rule are appropriate where the defendant's liability may be assessed on a basis common to all class members, even though questions of individual damages (or eligibility for damages) may present individualized issues that would foreclose certification of a damages class under Rule 23(b)(3). Thus, a "class action can be limited to the question of liability, leaving damages for later individualized determinations." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 28 (1st Cir. 2008). Other courts agree: "a class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members,

is permitted by Rule 23(c)(4) and will often be the sensible way to proceed." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (Posner, J.).

Thus, even where individual damages issues would otherwise preclude class treatment under Rule 23(b)(3) and *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), Rule 23(c)(4) authorizes a class action for liability issues. *See, e.g., In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014) ("As our three fellow circuits have already concluded, we agree that the rule of *Comcast* is largely irrelevant where determinations on liability and damages have been bifurcated in accordance with Rule 23(c)(4) and the district court has reserved all issues concerning damages for individual determination"). Courts in the First Circuit have routinely made the same point. *See In re McKesson Governmental Entities Average Wholesale Price Litig.*, 767 F. Supp. 2d 263, 269 (D. Mass. 2011) ("a court may certify a class on certain issues, like liability, while denying certification on other issues … The need for individualized damage proceedings does not ordinarily defeat predominance where there are still disputed common issues as to liability") (citing Fed. R. Civ. P. 23(c)(4) and *New Motor Vehicles*, 522 F.3d at 28); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 91 (D. Mass. 2005) ("[T]he need for individualized proceedings on damages does not necessarily defeat class certification because the Court has the authority to certify a class for liability only pursuant to Rule 23(c)(4)(A)."); *In re Prograf Antitrust Litig.*, 2014 WL 4745954, at *1 (D. Mass. 2014) ("Rule 23(c)(4) … enables courts to … certify classes as to liability only, leaving damages for later individualized determinations."); *see also generally Tardiff v. Knox Cnty*, 365 F.3d 1, 7 (1st Cir. 2004) ("Failing some practical solution allowing full resolution of all class damage claims in a single case, the court could enter a judgment of liability, leaving class members to pursue damage claims in separate law suits.").

Amex complains (at 2) that "Plaintiffs' claim for declaratory relief is in support of future damages" and so requires certification under Rule 23(b)(3)—which requires a showing that

common issues "predominate"—rather than Rule 23(b)(2). But even if that is correct,[5] it is nonetheless firmly established that, in the issue-class context, plaintiffs need only make a showing of predominance "*with regard to the issue proposed for certification*," and not with respect to the case as a whole. *See* Newberg on Class Actions § 4:92 (6th ed. 2023); *see also Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 411 (6th Cir. 2018) ("courts apply the Rule 23(b)(3) predominance" analysis to the "common issues [that] have been identified for class treatment under Rule 23(c)(4) … even where predominance has not been satisfied for the cause of action as a whole"); *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) ("[A] court may employ Rule 23(c)(4)(A) to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement."); *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996) (same); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 439-45 (4th Cir. 2003) (same); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012), *abrogated on other grounds by Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 559 (7th Cir. 2016) (same).[6]

---

[5] Some courts and commentators have reasoned that Rule 23(b)(2) is the more appropriate standard for issue class certification. *See, e.g. Berger v. Xerox Ret. Income Guarantee Plan*, 338 F.3d 755, 763–64 (7th Cir. 2003) (Posner, J.) ("True, the declaration sought and obtained was merely a prelude to a request for damages … But a declaratory judgment is normally a prelude to a request for other relief, whether injunctive or monetary; so there is nothing suspicious about the characterization of the suit as one for declaratory relief," which "can be maintained under Rule 23(b)(2)."); *see generally* Myriam Gilles & Gary Friedman, *The Issue Class Revolution*, 101 B.U. L. Rev. 133, 145 (2021) (discussing certification standards for issue classes).

[6] Amex's reference to due process concerns with the issue-class device is misplaced. Amex Br. at 11–12. The issue-class vehicle does not impinge a plaintiff's right to opt out from a damages class. Rather, after a class is certified under Rule 23(b)(3) and after liability is ascertained, each individual class member may then sue for damages or not, and each member controls his or her own damages case. Notably, Amex cites no case suggesting that this well-established Rule 23(c)(4) procedure violates due process. Yet, on Amex's theory, every issue-class case cited above would represent a due process violation. Finally, it's worth noting that the counsel for the merchants already represent each of the merchants who are members of the putative class, having represented them individually before the AAA.

Here, the issue of whether Amex violated the antitrust laws is common across all class members. At the class certification juncture, the merchants will handily show that common issues predominate "with regard to the issue proposed for certification." Newberg on Class Actions § 4:92.[7] And before then, Amex has not shown any need for this Court to exercise its discretion and impose the "drastic remedy" of striking class allegations. *Manning*, 725 F.3d at 59.

## III. The class is ascertainable.

Finally, Amex's ascertainability argument makes no sense. The class in this case is not just ascertainable; it is fully ascertained. It consists of all merchants that filed AAA arbitrations for which Amex refused to pay its filing fees, terminating the arbitrations. There is no guesswork here: Amex and the merchants' counsel both have an exact list of the class members. And contrary to Amex's argument (at 14), that list was not simply "determined by [] counsel based on … subjective criteria," as in *Rivera v. Exeter Financial Corp.*, 829 F. App'x 887, 887 n.1 (10th Cir. 2020). Rather, that list represents the 5,155 merchants as to whom the AAA closed the file in response to Amex's default. Nor is this a "fail safe" class definition, where "membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability." Amex Br. 14 n.6 (quoting *Roy v. Fedex Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 71 (D. Mass. 2018)). At the outset of this case, this Court will determine whether Amex waived its right to compel arbitration (it did). The class definition therefore in no sense turns on an uncertain merits determination down the road as to antitrust liability. And if this were to pose any issue at

[7] Accordingly, as noted above, even if the claim for injunctive relief here were totally different than in the AAA arbitrations where Amex defaulted, it would still be appropriate to maintain this class action under Rule 23(c)(4), because "the class action can be limited to the question of liability," which was absolutely in dispute in the AAA proceedings where Amex defaulted. *New Motor Vehicles*, 522 F.3d at 28.

all, this Court could simply refine the class definition to cover the merchants for whom Amex refused to pay its filing fees as determined by the AAA.

## CONCLUSION

Amex's motion to strike should be denied.

Respectfully submitted,

*/s/ Anthony Leone*
ANTHONY LEONE (# 6099)
LEONE LAW LLC
1345 Jefferson Blvd.
Warwick, Rhode Island 02886
(401) 921-6684
aleone@leonelawllc.com

DEEPAK GUPTA*
THOMAS SCOTT-RAILTON*
ERIC CITRON*
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*deepak@guptawessler.com*

SCOTT C. HARRIS*
DAN K. BRYSON*
MILBERG COLEMAN PHILLIPS BRYSON GROSSMAN PLLC
900 West Morgan Street
Raleigh, NC 27603
(919) 600-5000
sharris@milberg.com

PEGGY J. WEDGWORTH*
MILBERG COLEMAN PHILLIPS BRYSON GROSSMAN PLLC
405 East 50th Street
New York, NY 10020
(212) 594-5300
pwedgworth@milberg.com

TRACEY KITZMAN*
SONG PC

26 Broadway, 8th Floor
New York, NY 10004
(212) 599-0700
tkitzman@song.law
ROBERT W. COHEN*
LAW OFFICES OF ROBERT W. COHEN, PC
1901 Avenue of the Stars, Suite 1901
Los Angeles, CA 90067
Tel: (310) 282-7586; Fax: (310) 282-7589
rwc@robertwcohenlaw.com

* *admitted pro hac vice*

July 3, 2024

*Counsel for Plaintiffs*

## LOCAL RULE 7(c) STATEMENT

Oral argument is requested on this motion. If the Court would find oral argument useful in resolving this motion, counsel estimate that 30 minutes would be sufficient.

*/s/ Anthony Leone*
ANTHONY LEONE (# 6099)

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2024, I electronically filed the foregoing motion with the Clerk of the Court for the United States District Court for the District of Rhode Island by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Anthony Leone*
ANTHONY LEONE (# 6099)