UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

5-STAR GENERAL STORE aka BENTO LLC, MARC ALLEN, INC., FAST FORWARD MEDIA, INC., MEZE LLC, KENNEDY'S IRISH PUB INC., CARDEN, INC., FRENCH FLORIST, LLC, LUXE FURNITURE, INC., LUNA'S HOSPITALITY GROUP, LLC, and THE GENT'S PLACE MEN'S FINE GROOMING LLC, on behalf of themselves and others similarly situated,

Plaintiffs,

-against-

AMERICAN EXPRESS COMPANY and AMERICAN EXPRESS TRAVEL RELATED SERVICES CO. INC.,

Defendants.

Case No. 1:24-cv-00106-MSM-LDA

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION**

## TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 3

- I. Plaintiffs' Waiver Argument Must Be Decided by an Arbitrator. ........ 3
- II. If the Court Reaches the Merits, Plaintiffs Cannot Clear the High Bar To Show Amex Abandoned a Right To Arbitrate. ........ 8
  - A. Plaintiffs Must Meet a Demanding Standard to Establish Waiver. ........ 9
  - B. Under the Proper Standard, Plaintiffs Have Not Met Their Burden to Show Waiver or Default. ........ 10
  - C. No Arbitration "Has Been Had" Under Section 3 of the FAA. ........ 15
- III. Plaintiffs' Bad Faith Conduct Constitutes Unclean Hands and Precludes Any Assertion of Waiver. ........ 16
- IV. Amex Could Never Have Waived Its Right To Arbitrate Because the Claims Plaintiffs Plead Here Are Different than Those They Presented in Arbitration. ........ 19

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Boateng v. General Dynamics Corp.*,
473 F. Supp. 2d 241 (D. Mass 2007) ....6

*Brown v. Dillard's, Inc.*,
430 F.3d 1004 (9th Cir. 2005) ....7

*Con-Tech Sys., Ltd. v. Vt. Lumber & Stone Works, Inc.*,
CV No. 12-40107-TSH, 2013 WL 5514281 (D. Mass. Sep. 27, 2013)....9

*Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*,
588 F.3d 884 (5th Cir. 2009) ....8

*Dep't of Homeland Sec. v. New York*,
140 S. Ct. 599 (2020) (Gorsuch, J., concurring)....20

*Dr.'s Assocs., Inc. v. Distajo*,
66 F.3d 438 (2d Cir. 1995)....5

*Dr.'s Assocs., Inc. v. Distajo*,
107 F.3d 126 (2d Cir. 1997)....19

*Ehleiter v. Grapetree Shores, Inc.*,
482 F.3d 207 (3d Cir. 2007)....5

*Flores v. Nat'l Football League*,
No. 22-cv-0871 (VEC), 2024 WL 50238 (S.D.N.Y. Jan. 4, 2024) ....7

*FPE Found. v. Cohen*,
801 F.3d 25 (1st Cir. 2015)....4, 10, 19

*Freeman v. SmartPay Leasing, LLC*,
771 F. App'x 926 (11th Cir. 2019) ....7

*Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*,
7 N.Y.3d 96 (2006) ....9

*Grigsby & Assocs., Inc. v. M Secs. Inv.*,
664 F.3d 1350 (11th Cir. 2011) ....5

*Hernandez v. Acosta Tractors Inc.*,
898 F.3d 1301 (11th Cir. 2018) ....7, 12

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)....3, 5, 6

*In re Namenda Indirect Purchaser Antitrust Litig.*,
338 F.R.D. 527 (S.D.N.Y. 2021) ....................20

*In re Rimsat, Ltd.*,
212 F.3d 1039 (7th Cir. 2000) ....................18

*JPD, Inc. v. Chronimed Holdings, Inc.*,
539 F.3d 388 (6th Cir. 2008) ....................5

*Laugh Factory Inc. v. Basciano*,
608 F. Supp. 2d 549 (S.D.N.Y. 2009)....................18

*Liu v. Equifax Info. Servs.*,
No. 22-cv-10638, 2024 WL 308089 (D. Mass. Jan. 26, 2024)....................10

*Marie v. Allied Home Mortg. Corp.*,
402 F.3d 1 (1st Cir. 2005)....................4, 5

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) ....................5

*Morgan v. Sundance*,
596 U.S. 411 (2022)....................9

*NAVCAN.DC, Inc. v. Rinde*,
2023 WL 6622207 (S.D.N.Y. 2023)....................13

*Noble Capital Fund Management, L.L.C. v. US Capital Global Investment Management, L.L.C.*,
31 F.4th 333 (5th Cir. 2022) ....................15

*PaineWebber Inc. v. Faragalli*,
61 F.3d 1063 (3d Cir. 1995)....................11

*Pre-Paid Legal Services, Inc. v. Cahill*,
786 F.3d 1287 (10th Cir. 2015) ....................7, 12

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (1945)....................17

*Ronan v. Neighborhood Rest. Partners of Fla., LLC*,
2019 WL 13267169 (M.D. Fla. 2019) ....................13

*Russell v. Wyndham Vacation Resorts, Inc.*,
No. 22-CV-0880-L-DDL, 2023 WL 139803 (S.D. Cal. Jan. 9, 2023) ....................13

*Sink v. Aden Enters., Inc.*,
352 F.3d 1197 (9th Cir. 2003) ....................7

*Stowell v. Toll Bros*,
2007 WL 30316 (E.D. Pa. 2007) ..........13

*Texaco Puerto Rico, Inc. v. Dep't of Consumer Affs.*,
60 F.3d 867 (1st Cir. 1995) ..........17

*Thompson v. Cloud*,
764 F.3d 82 (1st Cir. 2014) ..........10, 11

*Tillman v. Tillman*,
825 F.3d 1069 (9th Cir. 2016) ..........15, 16

*Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer*,
No. CIV. A. 91-13345 WF, 1993 WL 137483 (D. Mass. Apr. 19, 1993) ..........11

*Wallrich v. Samsung Electronics America, Inc.*,
106 F.4th 609 (7th Cir. 2024) ..........8, 16

**Statutes & Rules**

9 U.S.C. § 3 ..........5, 15

9 U.S.C. § 4 ..........5

**Other Authorities**

U.S. Chamber of Commerce Institute for Legal Reform, *Mass Arbitration Shakedown: Coercing Unjustified Settlements* (2023), https://instituteforlegalreform.com/research/mass-arbitration-shakedown-coercing-unjustified-settlements ..........14

## PRELIMINARY STATEMENT

Plaintiffs concede that they are subject to valid, enforceable agreements to arbitrate all claims in this case. (Dkt. 21, Pls.' Opp. to Defs.' Mot. to Compel Arb. ("MTC Opp.") at 3-4.) Because Plaintiffs are attempting to avoid arbitration by litigating in this Court, Amex is entitled to an order under the Federal Arbitration Act ("FAA") compelling Plaintiffs to arbitrate and staying all litigation until they do.

In response, Plaintiffs argue that Amex supposedly waived or defaulted on its right to arbitrate after months of prolonged communications among Plaintiffs' counsel, Amex and AAA administrators about filing fees before any of their arbitrations even began. However, Plaintiffs' Opposition is tellingly silent about the circumstances created by Plaintiffs that resulted in those communications. Plaintiffs do not dispute that, in a September 20, 2023 letter, AAA stated that the filing fees would be $925 per arbitration. Plaintiffs do not dispute that Plaintiffs then refused to pay anything for months and instead badgered the AAA administrators to increase filing fees (to $3,500 per arbitration) beyond the level AAA said was necessary in order for Plaintiffs' claims to proceed. That the AAA administrators finally threw up their hands does not mean that Amex waived or defaulted on arbitration, especially because Amex had repeatedly said it was willing to pay its share of the filing fees that AAA repeatedly said were all that was required. And there is also no dispute that there are clear, open avenues to arbitrate these claims immediately under the parties' agreements, including through AAA's new Mass Arbitration Supplementary Rules that clarify the process for such cookie-cutter claims, and confirm that filing fees will be *even less* than the $925 per case that Amex remains ready to pay. (Decl. of Peter T. Barbur ISO Reply ISO Defs.' Mot to Compel Arb. ("Barbur Reply Decl.") Ex. 4, AAA Mass Arb. & Mediation Fee Schedule for Non-Consumer & Non-Emp./Workplace Disps. at 1-2.)

Ultimately, Amex's motion raises three, independent reasons why Plaintiffs cannot avoid their contractual agreements to arbitrate these claims. Plaintiffs have no good answer for any. The consequences of their efforts to stall, confuse and drive up the costs of arbitration should be dealt with by an arbitrator; they do not give Plaintiffs a license to come to this Court.

*First*, the question of waiver or default based on prior conduct by the parties involving fee disputes before AAA administrators is a question for an arbitrator, not a court, to decide. Plaintiffs cite an exception for "litigation-related" conduct, but that relies on law about litigation—not preliminary skirmishes before AAA administrators—and seeks to create a new exception squarely at odds with the strong federal policy in favor of arbitration. Whether what happened in preliminary discussions before AAA administrators amounted to waiver is a question that an arbitrator is well-suited to, and must, decide.

*Second*, even if the question of waiver or default were properly before this Court, Plaintiffs have not met their high burden to show that Amex intentionally and knowingly relinquished its right to arbitrate these claims. Amex stands ready to arbitrate each Plaintiff's claim, while it is Plaintiffs and their counsel that have stood in the way of moving their clients' claims forward. Amex is actively arbitrating hundreds of these claims in another arbitration organization, JAMS, including more than a dozen claims brought by putative class members in this action, and collectively is arbitrating thousands of claims in AAA and JAMS, all against claimants represented by Plaintiffs' counsel.' The preliminary sparring over filing fees shows the simple truth that Amex wants to arbitrate Plaintiffs' individual claims, as required by the parties' agreement, and is prepared to do so. In such circumstances, the FAA requires arbitration.

*Third*, under no circumstances could waiver or default be found here because Plaintiffs have unclean hands. The only reason these claims are not already proceeding in arbitration is because Plaintiffs—not Amex—refused to pay their share of fees upon AAA's initial determination. Rather, Plaintiffs spent months demanding that AAA increase the filing fees (with the additional amount charged solely to Amex) beyond the level AAA had repeatedly said was all that was necessary for the claims to proceed. That bad faith conduct means that Plaintiffs are foreclosed from claiming Amex is to blame for any supposed waiver or default.

For any of these reasons, this Court should grant Amex's motion, issue an order compelling Plaintiffs to arbitrate their claims and stay this proceeding while they do so.

## ARGUMENT

### I. PLAINTIFFS' WAIVER ARGUMENT MUST BE DECIDED BY AN ARBITRATOR.

Plaintiffs begin by arguing that Amex took "out of context" (MTC Opp. at 8) the Supreme Court's statement that the "presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability", *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Just the opposite. The Supreme Court explained that exceptions exist only in "the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter" and "where they are not likely to have thought that they had agreed that an arbitrator would do so". *Id.* at 83-84. No such exception could apply here. Plaintiffs' waiver arguments are about what was said with AAA administrators during pre-arbitration discussions, and what the AAA's rules mean. Such questions are uniquely suited for an arbitrator. *See id.* at 85 ("NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it.").

Nevertheless, Plaintiffs argue that this Court, not an arbitrator, should review the question of waiver because Amex supposedly engaged in "litigation-related activity" that only a Court can review. (MTC Opp. at 8 (quoting *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 14 (1st Cir. 2005).) But "litigation-related activity" means what it says: conduct in litigating a claim. As the First Circuit described the "litigation-related" exception in *Marie*, "invariably, these cases involve the inquiry into whether, by choosing or allowing the litigation of its claims before a court *rather than an arbitrator*, a party has waived its right to arbitrate". 402 F.3d at 12 (emphasis added). Thus, the First Circuit's test for assessing whether a "litigation-related" waiver exists is based on factors like "whether the parties participated in a lawsuit", "whether the litigation machinery has been substantially invoked" and "whether there has been a long delay and trial is near at hand". *FPE Found. v. Cohen*, 801 F.3d 25, 29 (1st Cir. 2015) (citations omitted). In other words, the "litigation-related activity" exception prevents a party from litigating a case on the merits in court, and then pulling up stakes and starting over in arbitration, with all of the attendant delays and inefficiencies that could cause. That is nothing like the preliminary discussions with AAA administrators that occurred here.

Plaintiffs suggest that the EEOC suit in *Marie* was no different than the communications with the AAA administrators here. (MTC Opp. at 9.) There is no comparison. In *Marie*, as a statutory prerequisite to filing a lawsuit in court, an employee filed a "charge" with the EEOC accusing the defendant of discrimination; the EEOC dismissed, stating that the plaintiff "now had a right to sue", which the plaintiff did. 402 F.3d at 5. The First Circuit found that a court could consider the question of waiver during the EEOC proceedings because the activity was "litigation-related"—it was "litigation before the EEOC", and it would have been "inefficient" to ask an arbitrator to analyze whether waiver had happened in EEOC litigation. *Id.* at 14. That is

why the cases Plaintiffs cite as applying *Marie* involved litigation conduct that would be less efficient to arbitrate.[1] But the analysis here is flipped. Arbitrators are most expert, and should decide, questions about waiver that depend on what arbitration rules mean, whether the parties and AAA followed them and how arbitrations should be administered alongside the hundreds of similar claims brought by the same counsel that are currently proceeding in AAA. *See Howsam*, 537 U.S. at 85 ("[F]or the law to assume an expectation that aligns (1) decisionmaker with (2) comparative expertise will help better to secure a fair and expeditious resolution of the underlying controversy—a goal of arbitration systems and judicial systems alike.").[2]

[1] *See Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) ("[Defendants] spent seventeen months litigating the case. This included devoting considerable time and effort to a joint stipulation structuring the litigation, filing a motion to dismiss on a key merits issue, entering into a protective order, answering discovery, and preparing for and conducting a deposition." (citations omitted)); *Grigsby & Assocs., Inc. v. M Secs. Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011) (remanding for analysis of waiver based on defendants "filing four lawsuits against Plaintiffs" before seeking to compel arbitration); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 211 (3d Cir. 2007) ("During the intervening four-year period, the parties engaged in extensive discovery, with both sides exchanging several sets of interrogatories, requests for production of documents, and expert witness reports, as well as participating in the depositions of numerous witnesses. After the parties were unable to resolve the case in mediation, GSI filed a motion for summary judgment, requiring Ehleiter to defend his claims on the merits and inviting final resolution of the case in a judicial forum."). The one case Plaintiffs cite that did not involve extended court proceedings, *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008), addressed correspondence between the parties during a "pre-litigation process"—not as part of arbitration—and the Court found there was no waiver of the right to arbitrate.

[2] Plaintiffs also cite dicta in *Marie* that noted, under one interpretation of the FAA, a court might analyze default before granting a stay, but not before compelling arbitration. (MTC Opp. at 10-11 (citing *Marie*, 402 F.3d. at 13, and comparing 9 U.S.C. §§ 3-4).) That gets Plaintiffs nowhere because the holding in *Marie* is limited to "litigation-related activity" because of "comparative expertise considerations" and the need for efficiency. 402 F.3d at 13. Those considerations all point in favor of sending any dispute here about arbitration procedures to arbitration. Plaintiffs also leave out that, in the authority cited by *Marie*, the Second Circuit adopted Amex's rule: "distinguish[ing] between cases where the waiver defense was based on prior litigation by the party seeking arbitration . . . and those when the defense was based on other actions". *Dr.'s Assocs., Inc. v. Distajo*, 66 F.3d 438, 456 (2d Cir. 1995).

Plaintiffs have no answer for *Boateng v. General Dynamics Corp.*, 473 F. Supp. 2d 241 (D. Mass 2007), which applied the "litigation-related activity" rule in *Marie* just as Amex would here. In *Boateng*, the plaintiff brought a lawsuit against her former employer, which promptly moved to compel arbitration under the terms of an employment contract. *Id.* at 244-45. The issue in *Boateng* was not compliance with a "human-resources policy", as Plaintiffs here say; it was compliance with "a four-step process for dispute resolution" culminating in "arbitration". *Id.* at 245. The court declined to decide whether the employer's alleged failure to satisfy that pre-arbitration process constituted waiver of the right to arbitrate:

> The alleged waiver at issue here is not based on litigation conduct. The *Marie* court expressly declined to consider the issue of whether waiver not based on litigation conduct properly belonged with the court or the arbitrator. The question then, is whether the Court should extend the First Circuit's holding in *Marie* to cover the non-litigation-related waiver alleged in this case. The Court declines to do so.
>
> This conclusion is supported by a number of factors. First, it comports with the language of *Howsam* that 'allegations of waiver, delay, or a like defense to arbitrability' should be decided by the arbitrator. 537 U.S. at 84, 123 S.Ct. 588. Second, determination of this issue involves questions of fact (e.g., whether Boateng reported her complaints of discriminatory and retaliatory treatment during the 2005 meetings) and contract interpretation (e.g., whether the Agreement requires that the dispute resolution process be invoked formally, in writing). Arbitrators are well-suited to answer such questions. *See Green Tree,* 539 U.S. at 453, 123 S.Ct. 2402. And third, allowing the arbitrator to decide the waiver issue in this case is in line with the liberal federal policy in favor of arbitration, and the general rule that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25.

*Id.* at 251. Here, too, Plaintiffs' waiver arguments involve questions of fact (what happened with AAA?) and contract interpretation (what fees are owed, and by who under the arbitration agreement and AAA rules?) that are well-suited for an arbitrator. *Id.* The Supreme Court's precedents, and the interest of efficiency that underlies them, all point toward arbitration.

Plaintiffs turn to out-of-circuit cases that are exceptional for another reason: they involved parties that were avoiding a resolution in any forum by litigating multiple rounds of motions to stay. For example, in *Pre-Paid Legal Services, Inc. v. Cahill*, 786 F.3d 1287, 1288-89 (10th Cir. 2015), the defendant "originally sought a stay of the district court proceedings to pursue arbitration. But then he failed to meet the AAA's fee requirements. Now he seeks to keep the stay in place for more arbitral proceedings, which he thwarted in the first place." *Id.* at 1299 n.7.[3] Here, by contrast, Amex has no desire to bounce Plaintiffs' claims between forums.[4] Plaintiffs do not dispute that, for many months, Amex was ready, willing and able to pay the filing fees assessed by AAA, while Plaintiffs refused. Here, Plaintiffs' counsel engaged in bad faith conduct and manufactured a mess in arbitration. As Plaintiffs' themselves argue, arbitrators should be given deference to sort out what they have done.

Indeed, while at the same time arguing that this case involves waiver through litigation that should be evaluated by the Court, Plaintiffs also argue that, in deciding that ultimate

---

[3] *See also Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003) ("Accepting [defendant's] reading of the FAA would also allow a party refusing to cooperate with arbitration to indefinitely postpone litigation."); *Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1306 (11th Cir. 2018) (finding that a party made a "calculated choice to abandon arbitration after getting adverse rulings from the arbitrator", including "because it thought the arbitrator had allowed too much discovery"); *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 928-31 (11th Cir. 2019) (same); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) (denying motion to compel arbitration where defendant previously "admitted that it refused to arbitrate" "[b]efore the district court").

[4] Professor Pfeffer-Gillet's concerns about claims bouncing between litigation and arbitration are unpersuasive. (Dkt. 23, Amicus Br. at 15-17.) Moreover, his amicus brief is that of a lawyer making legal arguments. It brings no unique expertise and merely interprets cases and statutes, as the parties have done. Professor Pfeffer-Gillett has filed two substantially similar amicus briefs to the one in this case, and in both cases, his arguments were roundly rejected. *Wallrich* is addressed later in Part II.C. In *Flores*, the court specifically noted that Professor Pfeffer-Gillett's arguments were inconsistent with governing law. *Flores v. Nat'l Football League*, No. 22-cv-0871 (VEC), 2024 WL 50238, at *5 (S.D.N.Y. Jan. 4, 2024). So too here.

question of waiver, the Court should apply a "general presumption that 'payment of fees' is a question for the arbitrator 'that the trial court should not review'". (MTC Opp. at 15 (quoting *Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009)).) In other words, Plaintiffs want to have it both ways. On one hand, in arguing about waiver, Plaintiffs focus on the details of the discussions with AAA—indeed, submitting a 10-page declaration laying a wholly inaccurate description of those discussions—and invite the Court to weigh in on these facts in order to find waiver. But on the other hand, they say this Court is not actually permitted to evaluate what happened at AAA. That makes no sense, and amounts to "heads I win, tails you lose".

Ultimately, Amex agrees that the facts of what happened in AAA are critical to the question of whether Amex knowingly, voluntarily and intentionally abandoned its right to arbitrate, and that evaluating those facts—assessing the implications of Plaintiffs' conduct and determining under AAA rules what fees should be owed and by which party—is the province of an arbitrator. That is consistent with Plaintiffs' reliance on *Wallrich v. Samsung Electronics America, Inc.*, 106 F.4th 609, 620 (7th Cir. 2024), in which the Seventh Circuit recently held that the issue of fee payments is a matter for an arbitrator, not a court. In fact, in *Wallrich*, the plaintiffs secured a similar amicus brief from Professor Pfeffer-Gillett making the same type of arguments he advances now—and the Seventh Circuit roundly rejected them. The result here should be the same.

## II. IF THE COURT REACHES THE MERITS, PLAINTIFFS CANNOT CLEAR THE HIGH BAR TO SHOW AMEX ABANDONED A RIGHT TO ARBITRATE.

Urging the Court to reach the substantive question, Plaintiffs pretend that only two things of note happened in the AAA proceedings: "Amex refused to pay its share of the fees" and "AAA terminated the arbitrations". (MTC Opp. at 12.) Those assertions are false. They reduce

what happened before AAA to the point of absurdity. And they are entirely disconnected from the controlling legal standard.

**A. Plaintiffs Must Meet a Demanding Standard to Establish Waiver.**

Plaintiffs first argue that Amex applied the "wrong law" by citing state contract law principles about waiver. (*Id.* at 12.) That is incorrect. "Where an agreement contains a choice of law provision, the issue of waiver is determined in accordance with the law of the jurisdiction chosen by the parties". *Con-Tech Sys., Ltd. v. Vt. Lumber & Stone Works, Inc.*, CV No. 12-40107-TSH, 2013 WL 5514281, at *11 (D. Mass. Sep. 27, 2013). Federal law does not displace these principles. *See Morgan v. Sundance*, 596 U.S. 411, 418 (2022) ("The policy is to make arbitration agreements as enforceable as other contracts, but not more so. . . . Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." (citations omitted)).

Regardless, Amex cited to both state and federal law, and the substance for present purposes is the same: a party alleged to have waived or defaulted on a contractual right to arbitrate must have "knowingly, voluntarily and intentionally abandoned" its right to arbitrate. *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006); *Morgan*, 596 U.S. at 417 ("Waiver, we have said, is the intentional relinquishment or abandonment of a known right." (internal quotations omitted)). Plaintiffs tellingly do not mention that controlling, dispositive standard.

Instead, Plaintiffs contend there is no longer a high bar for a finding of waiver after *Morgan*. (MTC Opp. at 13.) That is nonsense. *Morgan* addressed the "single issue" of whether, in deciding the issue of waiver in the arbitration context, it is necessary to show prejudice. 596 U.S. at 416. Otherwise, *Morgan* left undisturbed the FAA's "policy favoring arbitration". *Id*. at 418 (noting that courts should apply the standard for ordinary procedural rules governing

waiver or forfeiture in all cases involving contractual disputes). Indeed, Plaintiffs' own cases confirm this point: other than prejudice, the factors for evaluating waiver by litigation remain the same. *Liu v. Equifax Info. Servs.*, No. 22-cv-10638, 2024 WL 308089, at *7 (D. Mass. Jan. 26, 2024) (citing *FPE Found.*, 801 F.3d at 29).

Plaintiffs also cannot cast aside the "no-waiver" clause in the arbitration agreement. Plaintiffs argue that "a no-waiver clause doesn't automatically preclude" a finding of waiver (MTC Opp. at 19), but that misses the point. The arbitration agreement says either party "may choose . . . to not exercise rights under this arbitration provision . . . without waiving" them, and may seek to arbitrate any claim "at any time before the earlier of . . . trial . . . and final judgment". (Dkt. 18-6, Barbur Opening Decl. Ex. 5, Amex MOG § 13.1(c)(iii).) That confirms the parties expected what state and federal law make clear: the bar to prove waiver is demanding.

**B. Under the Proper Standard, Plaintiffs Have Not Met Their Burden to Show Waiver or Default.**

Plaintiffs never acknowledge, much less apply, any standard for waiver or default. That is because Plaintiffs cannot establish that Amex intentionally abandoned its right to arbitrate. As a matter of undisputed fact, Amex tried for months to pay filing fees that AAA confirmed were sufficient to begin arbitration of Plaintiffs' claims. (Dkt. 18, Defs.' Mot. to Compel Arb. ("Amex Opening Br.") at 4-7.) Plaintiffs ignore this context because it unequivocally rebuts any finding of intentional abandonment of the right to arbitrate.

Under the proper standard, the answer is clear. The First Circuit has instructed that a party can only waive its arbitration right either by "failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute". *Thompson v. Cloud*, 764 F.3d 82, 92 (1st Cir. 2014) (quoting *PaineWebber Inc. v.*

*Faragalli*, 61 F.3d 1063, 1066 (3d Cir. 1995)). Amex did neither. Amex complied with Plaintiffs' arbitration demands in all respects.[5] Upon receipt of Plaintiffs' demands, Amex promptly engaged with opposing counsel, participated in a AAA-sponsored mediation (until Plaintiffs abandoned it after 15 minutes) and worked to weed out hundreds of claims that Plaintiffs' counsel had submitted that were, on their face, duplicative, nonsensical or bogus. (Dkt. 18-8, Barbur Opening Decl. Ex. 7, Sept. 13, 2023 Letter from P. Barbur to H. Santo.) And Amex agreed, time and again, to pay its share of the fees AAA determined were required to proceed. (Dkt. 18-17, *id.* Ex. 16, Dec. 12, 2023 Letter from P. Barbur to E. Corsetti.)

Likewise, Amex has not "unambiguously manifest[ed] an intention not to arbitrate the subject matter of the dispute". *Thompson*, 764 F.3d at 92. Just the opposite—Amex has repeatedly expressed its willingness to arbitrate these claims. In the absence of such an unambiguous manifestation of intent, this Court may also look for "evidence in the record 'demonstrat[ing] that [Amex] *will* refuse to arbitrate'". *Id.* (quoting *Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer*, No. CIV. A. 91-13345 WF, 1993 WL 137483, at *5 (D. Mass. Apr. 19, 1993) (emphasis added). Plaintiffs cannot meet this standard either. The record they ignore shows that Amex is currently proceeding to arbitrate thousands of claims against Claimants represented by the same Plaintiffs' counsel, including dozens of putative class members, many of which are pursuing their claims right now before JAMS arbitrators. (Barbur

---

[5] Not only did Amex comply with Plaintiffs' arbitration demands, it did so while Plaintiffs refused to follow the steps required of them. For example, Plaintiffs (and every putative class member) simply alleged that they were bound by Amex's rules as incorporated in the MOG, but none submitted any evidence of that agreement, as required to initiate arbitration under both the MOG and AAA's rules. (Dkt. 18-6, Barbur Opening Decl. Ex. 5, Amex MOG § 13.1(c)(i)); Barbur Reply Decl. Ex. 5, AAA Com. Arb. R. & Mediation Procs. R-4(a)(i) ("Arbitration under an arbitration provision in a contract shall be initiated by the initiating party ('claimant') filing with the AAA . . . a copy of the applicable arbitration agreement from the parties' contract which provides for arbitration.").)

Reply Decl. ¶ 7.) That these merchants are proceeding in arbitration illustrates the fatal defect in Plaintiffs' argument as to the broader class—Plaintiffs cannot claim that Amex has refused to arbitrate claims that it is actively arbitrating, and likewise, there is no basis to suggest that Amex would act inconsistently by refusing to arbitrate any of the identical claims of other putative class members. Thus, arbitration remains a viable means for every member of the putative class to resolve their claims, which is impossible to square with Plaintiffs' assertion of waiver.

Plaintiffs' cases also do nothing to address the waiver question presented here. For example, their lead case, *Hernandez v. Acosta Tractors, Inc.*, says nothing about what conduct qualifies as a default in arbitration. 898 F.3d 1301 (11th Cir. 2018). That case held that a court could not enter a default judgment simply because a party had defaulted in arbitration. *Id.* at 1305. But in *Hernandez*, the existence of the arbitration default was uncontested. Unlike the facts here, the defendant in *Hernandez* had made "[a] calculated choice to abandon arbitration after getting adverse rulings from the arbitrator", and "acknowledge[d] it quit paying after the arbitrator failed to consolidate [arbitrations], and because it thought the arbitrator had allowed too much discovery". *Id.* at 1306. Similarly, in *Cahill*, the defaulting party had "refus[ed] multiple requests to pay", 786 F.3d at 1294—unlike here, where Amex affirmatively offered on multiple occasions to pay its share of filing fees, while it was Plaintiffs that withheld their payments. In that sense, Plaintiffs' reliance on *Cahill* for the idea that "a party's failure to pay its share of arbitration fees breaches the arbitration agreement" (*see* MTC Opp. at 13) proves Amex's point, because it was *Plaintiffs'* prior breach—their failure to pay any arbitration fees while engaging in a campaign to harass AAA into raising fees—that led to the closure of their

own arbitrations.[6] Plaintiffs' attempts to manufacture a record in AAA to fit within these cases comes nowhere close. Unlike in every case Plaintiffs cite, Amex agreed to pay the filing fees that AAA repeatedly said were required while Plaintiffs spent months refusing to pay those fees. Unlike in every case Plaintiffs cite, the Plaintiffs here badgered AAA into more than tripling the overall fee amounts—with the sole purpose of driving up Amex's arbitration costs.

More apt cases are those where courts find a party did not waive the right to arbitrate because it *tried* to arbitrate. That is what happened recently in *Russell v. Wyndham Vacation Resorts, Inc.*, when AAA sent parties a letter stating that, after an "administrative" review, AAA had determined that the defendant had "failed to comply with the AAA's policies" and AAA had "administratively closed [its] file". No. 22-CV-0880-L-DDL, 2023 WL 139803 at *2 (S.D. Cal. Jan. 9, 2023). The defendant was confused, especially because AAA had "issued inconsistent and confusing administrative letters". *Id.* at 3. The court ordered the parties to arbitrate, noting "Defendants[‘] willingness to move forward with arbitration, the ambiguity of the AAA letter, and the AAA's course of conduct". *Id.* at *4. For the same reasons here, Amex has not waived its right to arbitrate either: "there is no indication that Defendants have taken any actions that are inconsistent with the contractual right to arbitration. . . . Defendants have requested guidance from the AAA . . . [and] Defendants['] actions in this and other matters indicates a willingness to arbitrate." *Id.* at *5. All true here, too.

---

[6] The other unreported, out-of-circuit cases cited by Plaintiffs fare no better. *See NAVCAN.DC, Inc. v. Rinde*, No. 23 Civ. 2267 (LGS), 2023 WL 6622207, at *3-4 (S.D.N.Y. 2023) (finding defendants waived arbitration where they failed to pay arbitration fees after engaging in extensive discovery in arbitration, and had erroneously represented that transfer of overdue funds had been initiated); *Ronan v. Neighborhood Rest. Partners of Fla., LLC*, No. 6:19-cv-1130,2019 WL 13267169, at *2 (M.D. Fla. 2019) (finding a defendant waived the right to arbitrate when it successfully moved a court to compel arbitration, but then admittedly and without explanation failed to pay any fees in arbitration); *Stowell v. Toll Bros*, No. 06-cv-2103, 2007 WL 30316, at *1 (E.D. Pa. 2007) (same).

Moreover, unlike in every case Plaintiffs cite, this case involves Plaintiffs' use of mass arbitration tactics—bringing thousands of identical individual arbitrations—that have become rife with abuse.[7] AAA itself has charted a clear path forward to allow claims like Plaintiffs' to proceed. Earlier this year, shortly after Plaintiffs' counsel's campaign to lobby for higher fees, AAA adopted a new Mass Arbitration and Mediation Fee Schedule for Non-Consumer and Non-Employment/Workplace Disputes that eliminates the possibility that a party like Amex ever would be asked to pay $3,500 per claim. Under AAA's Mass Arbitration fee schedule, the per-case fees instead are $925 (for the first 500 cases), $775 (for cases 501 to 1,500) and $625 (for cases 1,501 and beyond). In other words, ***AAA has recently removed any stumbling block to arbitrating***. The parties could move forward with AAA arbitrations tomorrow, with these claimants joining the 486 others already proceeding in AAA and the 773 currently proceeding in JAMS.[8] That easily distinguishes these facts from every case Plaintiffs cite—and every case

[7] *See, e.g.*, U.S. Chamber of Commerce Institute for Legal Reform, *Mass Arbitration Shakedown: Coercing Unjustified Settlements* (2023), https://instituteforlegalreform.com/research/mass-arbitration-shakedown-coercing-unjustified-settlements/ ("Confronted with a U.S. Supreme Court that has consistently upheld the right to individualized arbitrations, the plaintiffs' bar is attempting to undermine arbitration by repurposing their class action playbook through abusive 'mass arbitrations.' Here's how it works: mass-arbitration plaintiffs' lawyers simultaneously file thousands of largely identical arbitration demands; the filings trigger massive up-front costs in the form of arbitration fees (because arbitration agreements routinely require businesses to pay most or all arbitral fees); then even if the claims are meritless, or completely frivolous, the business is either pressured to settle, abandon arbitration altogether, or pay that huge fee simply to have the chance to defend itself. And that sunk cost cannot be recovered even if the business wins every single arbitration.").

[8] Notably, proceeding to arbitration now with the putative class's arbitration claims would be inconsistent with how Plaintiffs' counsel is currently managing the other arbitrations they have already filed. In JAMS, Plaintiffs have requested that JAMS administrators delay the proceedings of over 500 claims because "the simultaneous prosecution of 200 individual arbitrations creates logistical challenges". (Barbur Reply Decl. Ex. 1, June 27, 2024 Email from T. Kitzman to S. Nevins.)

Amex is aware of—in which default was found. In this case—unlike in those other cases—Amex has evidenced a clear intent ***to arbitrate***, as required by the parties' agreements. That process must begin without any more of Plaintiffs' delay.

### C. No Arbitration "Has Been Had" Under Section 3 of the FAA.

On its face, Plaintiffs' complaint turns on the allegation that Amex has waived its right to require arbitration. Indeed, although this is a purported class action, unless there has been waiver, there can be no class based on Plaintiffs' class definition. Under Section 3 of the FAA, waiver involves the term "default" in the last clause of that section. 9 U.S.C. § 3. Nonetheless, in a one-paragraph throwaway argument, Plaintiffs suggest that Amex cannot compel arbitration because an arbitration "has been had" under a different clause of Section 3 that provides that a stay should only remain in place "until such arbitration has been had in accordance with the terms of the agreement". *Id.* The only authorities cited in support of this argument are three cases, each of which actually demonstrates why an arbitration has not "been had" here.

Two of Plaintiffs' "has been had" cases bear no resemblance to the facts here because they involved arbitrations past the appointment of an arbitrator and, indeed, past significant arbitral proceedings on the merits. In *Noble Capital Fund Management, L.L.C. v. US Capital Global Investment Management, L.L.C.*, 31 F.4th 333, 335 (5th Cir. 2022), over the course of 10 months, an arbitrator was appointed, that arbitrator entered an interim award, and another JAMS panel held a hearing and issued a "Partial Final Award" that froze one party's assets. At that point, with its assets frozen, the party could not pay JAMS, and "[t]he JAMS panel terminated the arbitration". *Id.* Based on those proceedings, the parties had "exercised their contractual right to arbitrate prior to judicial resolution in accordance with the terms of their agreements." *Id.* at 336. Not so here. The same is true of *Tillman v. Tillman*, 825 F.3d 1069, 1072-74 (9th Cir. 2016), in which the parties "began arbitration in New York under the rules of [AAA]", and

"[d]uring the arbitration, [one party] objected to several aspects of the arbitration as unnecessarily increasing costs", but "[t]he arbitrator nonetheless scheduled additional dates for a case-within-a-case adjudication". *Id.* at 1072. At that point, the party "borrowed money" but "was ultimately unable to provide the required deposit", and AAA "ultimately terminated the arbitration due to the missing deposits". *Id.* Those arbitrations were had; this one was not.

Plaintiffs' reliance on the third case is puzzling because, in *Wallrich*, the Seventh Circuit actually rejected the main arguments advanced by Plaintiffs and their amicus, Professor Pfeffer-Gillett—finding that the district court erred by weighing in on a dispute about unpaid arbitral fees because the arbitration agreement "delegated threshold arbitration fee disputes to the AAA". 106 F.4th at 620. Plaintiffs now say that *Wallrich* stands for the proposition that, if arbitration fees are not paid, the arbitration is "complete" and the parties may "pursue their claims on the merits in district court". (MTC Opp. at 15 (quoting *Wallrich*, 106 F.4th at 620).) Plaintiffs leave out the key difference between the cases: *Wallrich* involved special rules that apply only to consumer arbitrations—which this case is not—that provide that the parties are free to proceed in court if fees are not paid. (Barbur Reply Decl. Ex. 6, AAA Consumer Arb. R. R-1(d) ("Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.").) There is no such AAA rule that applies to this non-consumer case. Plaintiffs' arbitrations have not been had in accordance with the applicable rules and governing law.

## III. PLAINTIFFS' BAD FAITH CONDUCT CONSTITUTES UNCLEAN HANDS AND PRECLUDES ANY ASSERTION OF WAIVER.

Plaintiffs suggest that Amex "cites no authority" for its argument that Plaintiffs' unclean hands precludes their ability to assert waiver. (MTC Opp. at 19.) But "[i]t is old hat that a court called upon to do equity should always consider whether the petitioning party has acted in bad

faith or with unclean hands." *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 880 (1st Cir. 1995). And Amex cited many cases establishing that waiver is an equitable doctrine and that unclean hands is a defense to a claim of waiver. (Amex Opening Br. at 16-18.)

The law of unclean hands is well established. As the Supreme Court long ago explained:

> The guiding doctrine in this case is the equitable maxim that "he who comes into equity must come with clean hands." This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be "the abetter of iniquity." Thus while "equity does not demand that its suitors shall have led blameless lives," as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945) (citations omitted). This is a classic case of bad faith and unclean hands. Plaintiffs' insistence on forestalling arbitration to exhort AAA to raise non-refundable filing fees that Plaintiffs hoped would require Amex to pay $13 million more in administrative fees to AAA—even though AAA had repeatedly stated that such fees were not necessary in order for these claims to proceed—had no good-faith purpose, and Plaintiffs cannot offer one. The timeline is stark:

- *Sept. 20, 2023*: The AAA administrator stated that the filing fees for Plaintiffs' claims were $925 per case. (Dkt. 18-9, Barbur Opening Decl. Ex. 8.)
- *Sept. 20, 2023*: Plaintiffs' counsel responded by suggesting that these filing fees should be $3,500 per case. (Barbur Reply Decl. Ex. 2.)
- *Sept. 22, 2023*: The AAA administrator refused, reiterating that the filing fees were $925. (Dkt. 18-12, Barbur Opening Decl. Ex. 11.)

- *Nov. 16, 2023*: The AAA administrator confirmed that the parties can "proceed with initiating the merits arbitrations" and again the filing fees were $925. (Dkt. 18-13, *id.* Ex. 12.)
- *Dec. 1, 2023*: Plaintiffs again insisted on higher filing fees. (Dkt. 18-15, *id.* Ex. 14.)
- *Dec. 13, 2023*: Again, the AAA administrator reiterated the $925 filing fee. (Dkt. 18-14, *id.* Ex. 13.)
- *Dec. 28, 2023*: Plaintiffs again insisted on higher fees. (Barbur Reply Decl. Ex. 3.)
- *Jan. 18, 2024*: The AAA administrator reverses course and states that filing fees will be what Plaintiffs want them to be. (Dkt. 18-19, Barbur Opening Decl. Ex. 18.)

Plaintiffs' conduct clearly was in bad faith. Because it "has a material relation to the equitable relief" sought, the doctrine of unclean hands bars Plaintiffs from asserting waiver here. *Laugh Factory Inc. v. Basciano*, 608 F. Supp. 2d 549, 560 (S.D.N.Y. 2009); *see, e.g.*, *In re Rimsat, Ltd.*, 212 F.3d 1039, 1047 (7th Cir. 2000) (holding that tactics employed solely "for the purposes of imposing costs on [the opposing party] . . . certainly qualifies as bad faith conduct").

Unable to justify their conduct, Plaintiffs mostly pretend that nothing happened before December 2023. For example, Plaintiffs assert that their failure to pay filing fees until January 2024 was due to a mediation in October 2023 that collapsed shortly after they learned that Amex was more interested in determining the process for arbitration than providing a quick payout.[9] (MTC Opp. at 21.) What really happened, however, was that Plaintiffs refused to pay their share of the $925 per-claim that AAA confirmed was the required filing fee, and instead spent months

[9] In any event, the AAA Rules mandate that "mediation shall take place concurrently with the arbitration and shall not serve to delay the arbitration proceedings". (Barbur Reply Decl. Ex. 5, AAA Com. Arb. R. & Mediation Procs. R-10.)

arguing that AAA should increase the fee, for no reason other than to inflict financial pain on Amex. Plaintiffs did not undertake those efforts in good faith; they did them for the sole purpose of increasing cost to Amex. With that inequitable conduct on their hands, Plaintiffs cannot ask this Court to do equity.

## IV. AMEX COULD NEVER HAVE WAIVED ITS RIGHT TO ARBITRATE BECAUSE THE CLAIMS PLAINTIFFS PLEAD HERE ARE DIFFERENT THAN THOSE THEY PRESENTED IN ARBITRATION.

Setting everything else aside, Amex cannot have waived its right to arbitrate *these* claims because Plaintiffs substantively and significantly changed them before coming to this Court.[10] Waiver analysis only could have a place if the claims to be litigated presented "the same legal and factual issues" as those previously presented in arbitration. *FPE Found.*, 801 F.3d at 30. Here, Plaintiffs altered the "scope or theory of the claims". *Dr.'s Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997). In particular, Plaintiffs changed their request for relief by adding new demands for declaratory relief and for a nationwide injunction against Amex's rules for any merchant, anywhere. (Dkt. 1, Class Action Compl. at 20.) Plaintiffs also changed their theory of liability, which they now claim will be based on Amex's "market power in the relevant market" (*id*. ¶ 44), when Plaintiffs previously pleaded in arbitration that "market power concepts have no relevance to this case" (Dkt. 18-5, Barbur Opening Decl. Ex. 4, Arb. Demands ¶ 51).

Plaintiffs dismiss these fundamental changes by stating they do not "substantially alter" any claims. (MTC Opp. at 23-25.) The idea that adding a demand for a nationwide injunction is insignificant to the scope of Plaintiffs' claims is absurd. *See, e.g.*, *Dep't of Homeland Sec. v.*

[10] Amex's motion to strike, filed contemporaneously with this motion, also discusses this issue. Because Plaintiffs are attempting to secure relief in federal court that they never previously pursued in arbitration, Plaintiffs' claims must be sent to arbitration or, in the alternative, Plaintiffs' class allegations must be stricken from the complaint. In no event should Plaintiffs be permitted to proceed in federal court on claims that they never sought to arbitrate.

*New York*, 140 S. Ct. 599, 601 (2020) (Gorsuch, J., concurring) (noting the "equitable and constitutional questions raised by . . . nationwide injunctions"). The same is true for Plaintiffs' argument that their new theory based on market power is indistinguishable from their old theory that disclaimed it. *See In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 553 (S.D.N.Y. 2021) (noting that in the class-certification context, where "a plaintiff alleges more than one theory of liability, the theories must be analyzed separately").

## CONCLUSION

For the reasons discussed herein, Plaintiffs have valid, enforceable arbitration agreements and Amex has not waived its right to arbitrate Plaintiffs' claims. Amex respectfully requests that this Court grant Amex's request, issue an order compelling the parties to arbitrate pursuant to the FAA and stay this proceeding.

August 2, 2024

Respectfully submitted,

**WHELAN CORRENTE & FLANDERS,**

by

*/s/ Robert Clark Corrente*
Robert Clark Corrente

100 Westminster Street, Suite 710
Providence, RI 02903
(401) 270-4500

**CRAVATH, SWAINE & MOORE LLP**
Peter T. Barbur (*pro hac vice*)
Kevin J. Orsini (*pro hac vice*)
Helam Gebremariam (*pro hac vice*)
David H. Korn (*pro hac vice*)

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

*Attorneys for Defendants American Express Company and American Express Travel Related Services Company, Inc.*